## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT D. MABE, INC., d/b/a Ashville Apothecary and Circleville Apothecary, et al.,** | : | |
| | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:17-1102** |
| **v.** | : | **(JUDGE MANNION)** |
| **OPTUM RX, Successor by Merger to Catamaran Corp.,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

## MEMORANDUM

Pending before the court is the non-arbitrable plaintiffs'[1] motion to compel discovery. (Doc. 97). Upon review, the motion will be **DENIED**. Moreover, defendant's counsel has brought to the court's attention a related discovery dispute which, although not attached to a pending motion, will be decided by the court herein. (Doc. 186).

---

[1] The non-arbitrable plaintiffs are (1) Redner's Market, Inc., d/b/a Redner's Pharmacy #21, 22, 23, and Redner's Pharmacy; (2) Rx Shops, Inc., d/b/a Hometown Pharmacy; (3) Kuler Drugs, LLC, d/b/a Med Depot Pharmacy; (4) S & R Drug, Co., (S-Corp) d/b/a S&R Drug Co.; (5) Pine Street Pharmacy d/b/a Stacy's Family Pharmacy; and (6) Wells Pharmacy (Sole Prop.), d/b/a Wells Pharmacy.

## I.   LEGAL STANDARD

Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery. Under Rule 37(a), a party may file a motion to compel discovery when the opposing party fails to respond or provides incomplete or evasive answers to properly propounded document requests or interrogatories. *See* Fed.R.Civ.P. 37(a)(3)(B)(iii-iv).

In requesting discovery, Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and, the fact is of consequence in determining the action." Fed.R.Evid. 401. "To determine the scope of discoverable information under Rule 26(b)(1), the Court looks

initially to the pleadings. <u>Hoffman v. Champion Power Equip., Inc.</u>, 2017 WL 2535954, at *1 (M.D. Pa. June 12, 2017) (citing <u>Trask v. Olin Corp.</u>, 298 F.R.D. 244, 263 (W.D. Pa. 2014)).

Because Rule 26(b)(1) provides for a broad scope of discovery, courts often apply liberal treatment to discovery rules. <u>See</u> <u>Clements v. N.Y. Cent. Mut. Fire Ins. Co.</u>, 300 F.R.D. 225, 226 (M.D.Pa. 2014) (citation omitted). Nevertheless, even relevant discovery may be limited under certain circumstances. In this regard, the 2015 amendment to Fed.R.Civ.P. 26 reinforces the shared obligation of the parties, counsel, and the court "to consider the proportionality of all discovery and consider it in resolving discovery disputes." The Advisory Committee notes explain:

> A party claiming undue burden or expense ordinarily has far better information – perhaps the only information – with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all other factors in reaching a case-specific determination of the appropriate scope of discovery.

Fed.R.Civ.P. 26 cmt. (2015).

The scope and conduct of discovery are within the sound discretion of the trial court. In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661-62 (3d Cir. 2003); see also McConnell v. Canadian Pacific Realty Co., 280 F.R.D. 188, 192 (M.D. Pa. 2011) ("Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the Court's discretion and judgment."). Brown v. Camp Hill, 2017 WL 3868501, at *1 (M.D. Pa. Sept. 5, 2017). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

## II.    PLAINTIFFS' MOTION TO COMPEL

The background of the instant action has been set forth in a number of prior rulings. Suffice it to say that the moving plaintiffs are independent pharmacies challenging the reimbursements they receive from defendant and other pharmacy benefit managers ("PBMs"). Plaintiffs allege that defendant's low Maximum Allowable Cost ("MAC") payments for generic prescription drugs breached their contracts and violated state laws regulating

- 4 -

MAC prices. Specifically, plaintiffs allege that defendant has multiple MAC lists and MAC prices which it uses to reimburse mail order pharmacies and large chains such as CVS and Walgreens at higher "maximums" than the "maximum" it claims to pay plaintiffs, and that defendant charges a "spread" to health plans for prescriptions while it reimburses plaintiffs below their acquisition cost.

In the course of this action, plaintiffs have served various discovery requests upon defendant and, in the instant motion to compel, indicate that the parties are at an impasse regarding two critical areas of discovery. [2] The

_____

[2] Plaintiffs' motion also discusses a third area of discovery wherein plaintiffs seek documents and information pertaining to co-pay clawbacks (i.e., what happens when the co-pay is greater than the MAC price set by defendant), and DIR fees (direct and indirect remuneration fees). Plaintiffs provide that Supplemental Interrogatories 14-16 and Supplemental Requests for Production 24-26 deal with these clawbacks and DIR fees, but that the defendant has failed to provide any response whatsoever to the supplemental interrogatories or supplemental requests for production. It appears from the record that the parties are in the process of resolving these matters on their own. (Doc. 117, n. 11 (filed under seal); Doc. 195, Ex. A (filed under seal)). As such, the court need not address these requests at this time. Plaintiffs undoubtedly will bring it to the court's attention if further intervention is needed on these matters.

first area seeks information showing how much defendant pays mail order and large chain pharmacies for the same prescriptions filled for the same health plans as plaintiffs. Under this category, plaintiffs seek to compel responses to the following interrogatories:

> 5.    During the period in question, have you at any time maintained more than one MAC list for any single plaintiff pharmacy? If so, how many, and how many MAC lists did you or do you have that reimburse(d) the same Plaintiff pharmacy different MAC prices for the same drug? Produce all documents, including all MAC lists for the time period in question, relating to your answers.[3]

> 6.    During the period in question, did you have more than one MAC list in effect for the same health insurance plan, at the same time, depending on which pharmacy (including mail order) filled the prescription? If so, please explain why there were different MAC lists in effect during the same time period for the same plan for different pharmacies.[4]

---

[3] Although defendant objected to this interrogatory on a number of grounds, without waiver of any objections, defendant responded "No, Optum does not maintain more than one MAC list for a given individual pharmacy. Rather, Optum maintains MAC lists for groups of pharmacies. At any given time there may be more than one MAC list that specifies the MAC prices payable under a specific health plan." As defendant has responded to this interrogatory by indicating that it does not maintain more than one MAC list for any single plaintiff pharmacy, the court finds no further response is necessary to this interrogatory.

7.     During the period in question, did you reimburse any other pharmacy participating in the same health insurance plan as any plaintiff pharmacy at a higher price than you paid the plaintiff for the same generic drug filled at the same time and in the same quantity and dosage? If so, please identify all such transactions, indicating the name of the pharmacy, the date and amount of the payment and explain why any other pharmacy was reimbursed at a higher price. Produce all documents, including all MAC lists for the time period in question relating to your answers.

8.     During the period in question, did you reimburse any mail order pharmacy participating in the same insurance plan as any plaintiff pharmacy at a higher price than what you paid plaintiff for identical generic drugs (with identical quantities/dosages) filled at the same time? If so, explain why any mail order pharmacy was reimbursed at a higher rate and produce all documents relating to your answer.

Related to this area, plaintiffs seek responses to the following document requests:

_____

[4] Again, defendant objected to this interrogatory on a number of grounds. Without waiver of the objections, Optum provided, "Yes, the MAC list in effect for individual health insurance plans and applicable to a particular pharmacy vary according to a number of different factors, including, but not limited to the pharmacy or group of pharmacies' purchasing power, sales volume, membership in a Pharmacy Services Administration Organizations ("PSAOs"), and/or number of locations." Again, the court finds no further response is necessary.

1.      All documents relating to your answers to Interrogatories.

18.     All documents evidencing your methodology for establishing MAC pricing for independent pharmacies.[5]

20.     All documents evidencing the number of different MAC lists used by Catamaran from 2013 through present.

The second area of discovery in dispute seeks information showing how much defendant is paid by health plans for the prescriptions filled by plaintiffs, as well as defendant's contracts with the plan sponsors governing such payments. Specifically, plaintiffs seek responses to the following interrogatories:

9.      For each generic prescription filled by a plaintiff pharmacy, describe how you are compensated by the plan sponsor and produce all documents relating to that compensation scheme.

10.     For the period in question, describe in detail how Optum Rx charges a pharmacy's claims back to Optum Rx's clients. The description should include, but not be limited to AWP discounts, dispensing fees, transaction fees and any rebates associated with the contract between the client and Optum Rx. Produce all documents relating to your answer.

_____

[5] Plaintiffs' motion reflects Request 18 as reading "All documents evidencing your methodology in establishing MAC pricing for large chain pharmacies such as CVS and Walgreens." However, the documentation provided by plaintiffs' counsel, reflects the wording as set forth herein.

With respect to requests for production in this area, plaintiffs are seeking:

     1.     All documents relating to your answers to Interrogatories.

     6.     The portions of your agreements with plan sponsors which specify how you are paid for the generic prescriptions filled by Plaintiff Pharmacies.

Defendant objected to the above interrogatories and requests for production on a number of grounds, including that the information sought is irrelevant, the information is confidential and proprietary and production of the information is disproportionate to the needs of the case.

In considering plaintiffs' motion, the party requesting discovery bears the initial burden of proving that the discovery is relevant. In their second amended complaint, plaintiffs have alleged that defendant breached their contracts and violated state laws by having multiple MAC lists and prices in which it reimburses mail order pharmacies and large chain pharmacies at higher "maximums" than the "maximum" it pays plaintiffs and that defendant charges a "spread" to health plans for prescriptions while it reimburses plaintiffs below their acquisition costs. Plaintiffs argue that information relating to defendant's establishment of different MAC prices for the same

drug in the same insurance plan, the amounts paid to defendant by health plans for prescriptions filled by plaintiffs and amounts defendant paid large chain and its own mail order pharmacies for the same drugs sold by plaintiff under the same health plans, and why defendant paid these pharmacies different reimbursement prices are relevant to their claims. In response, defendant challenges plaintiffs' ability to state a legal claim and therefore challenges the relevancy of plaintiffs' discovery requests.

Initially, a challenge to the legal sufficiency of the plaintiffs' claims is more appropriate for a dispositive motion. For purposes of the instant motion, the court focuses on the issues of relevance and proportionality as related to the claims set forth in plaintiffs' second amended complaint. Moreover, through various discussions during telephonic discovery dispute conferences and rulings of the court in both this matter and the related Lakeview[6] matter, the court has indicated that information of the type requested by plaintiffs is relevant to the claims they raise. The court will not belabor the point herein.

---

[6] Lakeview v. Catamaran Corp., Civil Action No. 3:15-290.

As the court has determined that the discovery requested by plaintiffs is relevant, the burden shifts to defendant to demonstrate why the discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. <u>Floyd v. Olshefski</u>, 2016 WL 738819 at *1 (M.D.Pa. Feb. 22, 2016 (citations omitted). Here, defendant argues that it should not be compelled to produce the requested information because it is disproportionate to the needs of the case. More importantly for purposes of this decision, defendant argues that the information plaintiffs seek is highly confidential and proprietary. To this extent, defendant argues that its contracts with health plan customers ("Customer Contracts") and with large chains, including, but not limited to, CVS and Walgreens ("Pharmacy Agreements") are subject to confidentiality clauses (Doc. 117, Ex. G, ¶¶6, 13), and that the "pricing information and the financial data, formulas, methods and processes contained in the Customer Contracts and Pharmacy Agreements, including that relating to the determination of [defendant's] pricing for services rendered to its customers, the amount it receives from its customers and the reimbursements paid to network pharmacies" is proprietary. (<u>Id.</u>, ¶¶9-11)." According to defendant's materials, "[t]his

information is unique in the industry and required substantial time, effort, funding and expertise to develop. (Id., ¶9)." Defendant argues that disclosure of the pricing information and contracts would harm defendant in that the information contains "extensive financial data, business processes and methods, as well as Catamaran's marketing and other business strategies, as well as performance goals." (Lakeview, Doc. 39, Vesledahl Decl. ¶4, Doc. 117, Ex. G, ¶7). Defendant's materials provide that disclosure of such "commercially sensitive and confidential information" could damage defendant's business and give plaintiffs an unfair competitive advantage in future negotiations. In addition, defendant argues that plaintiffs' counsel represents several hundred pharmacies beyond the non-arbitrable plaintiffs in this case and disclosure of the information may unfairly influence counsel's litigation strategy in other proceedings outside of this litigation.

Defendant raised these same arguments in Lakeview in relation to its motion to quash subpoenas served by Lakeview on three of defendant's

clients.[7] In considering defendant's arguments in <u>Lakeview</u>, this court ultimately concluded that the Customer Contracts and information requested would contain extensive data beyond the scope of what is at issue in these matters.[8] Further, the court found that to allow Lakeview to acquire the Customer Contracts and information would potentially allow Lakeview to access Catamaran's business strategy, marketing goals, profit margins, pricing goals, etc. and utilize that information beyond the scope of the pending litigation.

As did Lakeview, plaintiffs here argue that there would be no harm in disclosing the requested information to them because they are not in

_____

[7] In that case, Lakeview conceded the confidential nature of the contracts but argued that the information contained in the contracts would be subject to the protective order entered by the court.

[8] In <u>Lakeview</u>, plaintiff sought all contracts with defendant in effect between 2012 and present; all documents relating to amounts paid to defendant for all generic drug prescriptions filled between 7/1/2012 and present by Lakeview Pharmacy; and all documents relating to amounts paid to defendant for all generic drug prescriptions filled between 7/1/2012 and present by Lakeview LTC Pharmacy. In other words, plaintiff in <u>Lakeview</u> was seeking contracts and information relating only to the second area of discovery at issue here. However, defendant argues that the same considerations would apply to the contracts and pricing information in the first area of discovery at issue in this case.

competition with defendant and therefore they could not gain any competitive advantage through knowledge of the terms of the Customer Contracts, the Pharmacy Agreements or any information related thereto. Moreover, plaintiffs argue that they are subject to the court's protective order (Doc. 21) and any harm to defendant is predicated on plaintiff's violation of the protective order which is a "more ominous restriction than [defendant's] competitors are under when they sign an NDA to participate in the PBM bid process." (Doc. 135, citing Wilkinson Aff., at ¶73).

In considering the information before the court, as did Lakeview, the plaintiffs here have alleged in their second amended complaint that they are, in fact, in competition with defendant (Doc. 36, ¶496). As discussed previously, courts have routinely recognized that "disclosure [of confidential information] to a competitor is more harmful than to a noncompetitor." American Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 741 (Fed. Cir. 1987) (citing Coca-Cola Bottling Co. v. Coca-Cola Co., 107 F.R.D. 288, 293 (D.Del. 1985)). Moreover, as this court found in Lakeview, the mere presence of a protective order does not by itself require disclosure of any kind, and courts have routinely found that a protective order is insufficient protection against

unnecessary disclosure of confidential information to the requesting party. (Lakeview, Doc. 86 (quoting Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1325 (Fed. Cir. 1990) ("[I]t would be divorced from reality to believe that either party here would serve as the champion of its competitor . . . to maintain the confidentiality designation or to limit public disclosure . . . during trial.")). Because plaintiffs are admittedly in competition with defendant and because plaintiffs' counsel in this case is involved in other litigation and arbitration matters with defendant involving hundreds of pharmacies, the court, once again, finds that the protective order issued in this case is insufficient to protect against the competitive advantage that would be afforded plaintiffs if the court were to allow the requested discovery. As such, the plaintiffs' motion to compel discovery will be denied.[9]

---

[9] Because the court finds that the information sought is confidential and proprietary and therefore need not be produced, the court need not consider the proportionality factors related to the requests.

### III.   DEFENDANT'S DISCOVERY REQUEST

On April 9, 2020, defendant's counsel filed correspondence with the court which indicates that it also has discovery requests outstanding related to certain allegations set forth in plaintiffs' second amended complaint that need the court's attention. The allegations at issue include:

501. Catamaran's reimbursements have been typically significantly less than other PBMs.

504. Based on modern technology—which Catamaran possessed at all times relevant to this claim—PBMs are able to make MAC price adjustments within 30 hours ("the lag time") of a price change. During the lag time, a PBM will typically (1) receive electronic files containing AWP pricing information from a source like Medi-Span or First DataBank; (2) unzip the files and resolve any attendant errors with the pricing source; and (3) load the new prices into its computer system.

509. The polling data is consistent with Plaintiffs' experience with Catamaran and its failure to update its MAC prices—when there is a price increase—with a speed that is commercially reasonable. For years, Catamaran has had the ability to update its MAC prices every seven days, but chose not to do so when prices increased.

511. A seven-day update requirement has been commercially reasonable for years. Yet, before 2016, Catamaran often did not even update prices for generics within seven weeks of an increase in wholesale price.

512. Good faith and commercial reasonableness require that, in setting reimbursement rates for Plaintiffs, Catamaran (1)

consistently and timely review its MAC prices, update them at least every seven days and no more than seven days after relevant increases in drug prices; (2) refrain from reimbursing Plaintiffs below their acquisition costs; and (3) set its MAC prices by using actual wholesale prices available to retail pharmacies.

520. Good faith and commercial reasonableness require that, in exercising its discretion to set reimbursement rates for Plaintiffs, Catamaran (1) consistently and timely review its MAC prices, updating them at least every seven days and no more than seven days after relevant increases in drug prices; (2) refrain from reimbursing Plaintiffs below their acquisition costs; and (3) set its MAC prices by using actual wholesale prices available to retail pharmacies.

542. Plaintiffs' MAC appeals are disproportionately directed at Catamaran, as opposed to other PBMs with whom they contract, because Catamaran's reimbursement rates are typically worse.

551. The economic damage done by Catamaran's failure to retroactively reimburse following a successful MAC pricing appeal is exacerbated by the fact that it has routinely taken weeks to decide the appeal, during which time the drug price is likely to have experienced substantial fluctuation detrimental to Plaintiffs. Catamaran's average response time has been longer than other large PBMs (typically 5-7 days) that received MAC appeals from Plaintiffs.

(Doc. 36).

Based upon these allegations, which challenge defendant's actions in relation to other PBMs and in terms of commercial reasonableness, defendant requested certain discovery from plaintiffs, including: (1) plaintiffs'

contracts with PBMs other than defendant; (2) all MAC pricing lists utilized by PBMs other than Optum; (3) communications with those PBMs relating to the rates paid by those PBMs, MAC pricing, and notifications of changes in MAC pricing reimbursement rates; (4) all MAC pricing appeals submitted to other PBMs; (5) all plan data or plan rate sheets related to any contract with other PBMs; and (6) all documents reflecting any fees charged plaintiffs by other PBMs other than defendant for claims processing. Plaintiffs have challenged these discovery requests as irrelevant under Fed.R.Civ.P. 26(b)(1). Further, plaintiffs argue that the requests require the production of proprietary and confidential documents protected by non-disclosure agreements with other entities.

With respect to defendant's requests for discovery, plaintiffs have placed at issue defendant's actions with respect to MAC pricing and MAC appeals as compared to other PBMs and commercially reasonable standards. Defendant provides that evidence of reimbursements paid by other PBMs for the same drugs that form the basis of plaintiffs' claims is probative of whether defendant's reimbursement rates are commercially reasonably or "typically worse" than other PBMs as alleged by plaintiffs and,

further, that discovery relating to the processes used by other PBMs to adjudicate MAC appeals, including the frequency and result of appeals submitted by plaintiffs to other PBMs and the period of time other PBMs take to modify MAC prices after a MAC appeal or a change in the price of a generic drug are probative of the commercial reasonableness of defendant's actions and essential to permit defendant to defend against the allegations of the second amended complaint. The court agrees and finds that the information requested by defendant is relevant.

To the extent plaintiffs argue that the information sought by defendant is confidential and proprietary, defendants respond that the bulk of the non-arbitrable plaintiffs have not identified the PBMs with whom they contract and that none of the non-arbitrable plaintiffs have produced any of the contracts or portions of contracts that purportedly contain a confidentiality provision. In fact, defendant provides that plaintiffs have not searched their contracts with other PBMs to confirm that all such contracts even contain a confidentiality clause. Defendant's materials provide that one or more of plaintiffs' contracts with other PBMs contain a mechanism to request the PBM's consent to disclosure of information, but plaintiffs have refused to seek such consent

- 19 -

arguing that doing so would be disproportionate to the benefit of discovery. Plaintiffs respond that they agreed to produce the information sought by defendants relating to  the amounts defendant's competitors pay plaintiffs for prescriptions they fill for different health plans, subject to the confidentiality obligations imposed by their agreements with the PBMs, provided that defendant discloses the information sought in plaintiffs' first area of disputed discovery above relating to what it paid to large chain drug stores and to defendant's own mail order pharmacy. The court has now ruled that defendant is not obligated to provide the information sought by plaintiffs. Moreover, because it is unclear whether plaintiffs' contracts with other PBMs contain confidentiality agreements and whether said PBMs would consent to disclosure of the information defendant seeks, plaintiffs are to identify for defendant each of the PBMs with which they contracted during the relevant time, whether the contracts with the identified PBMs contain confidentiality clauses and, if they do, whether those contracts contain a mechanism by which to request the PBMs' consent to disclosure of the information. To the extent that the contracts with other PBMs contain confidentiality clauses and do not provide a mechanism by which to request the PBMs' consent to

disclosure of the information, the confidential information need not be provided for the same reasons applicable to defendant. To the extent that the contracts do not contain confidentiality clauses, the non-confidential information is to be provided to defendant. To the extent that the contracts contain confidentiality clauses, but also contain a mechanism by which plaintiffs can request the PBMs' consent to disclosure of the information, plaintiffs are to seek such consent and provide defendant with the appropriate response.

In light of the foregoing, an appropriate order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATE: July 28, 2020**
17-1102-01

- 21 -