**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT D. MABE et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:17-CV-01102 |
| v. | |
| OPTUMRX, | (MEHALCHICK, J.) |
| Defendant. | |

<u>**MEMORANDUM**</u>

Before the Court is a mass action initially filed on June 22, 2017, by over 400 Plaintiff-pharmacies ("Plaintiffs") against pharmacy benefits manager, OptumRx. (Doc. 1; Doc. 36). The operative second amended complaint was filed on February 13, 2018. (Doc. 36). Therein, Plaintiffs allege claims of breach of contract and breach of the duties of good faith and dealing, as well as violations of various state statutes. (Doc. 1). Presently before the Court is OptumRx's renewed motion to compel arbitration under the standard set forth in Federal Rule of Civil Procedure 56, filed after limited discovery on the issue of arbitrability and in consideration of the Third Circuit's ruling on OptumRx's previous motion to compel arbitration asserted under Rule 12. (Doc. 42; Doc. 336); *see Robert D. Mabe, Inc. v. OptumRX, 43 F.4th 307 (3d Cir. 2022).* Also before the Court is Plaintiffs' motion for summary judgment on the issue of arbitration.[1] (Doc. 335). As detailed below, Plaintiffs' motion for summary

---

[1] Plaintiffs motion for summary judgment was incorrectly filed as a Statement of Facts. (Doc. 335). Review of the materials submitted reveal the submission is intended to be a motion for summary judgment.

judgment (Doc. 335) will be **DENIED** and OptumRx's motion to compel arbitration (Doc. 336) will be **GRANTED**.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, the following factual summary is taken from the parties' filings related to the instant motions. (Doc. 335; Doc. 336). OptumRx is a pharmacy benefits manager that administers prescription drug programs on behalf of health-insurance plans. (Doc. 337-3, ¶ 2; Doc. 338, ¶ 1; Doc. 368, ¶ 1). The plaintiffs in this action are over 400 pharmacies that contract to fill prescription drugs for members of health plans in OptumRx's network ("Plaintiffs"). (Doc. 36, ¶ 449; Doc. 338, ¶ 3). Here, OptumRx moves to compel arbitration of 415 of the 431 Plaintiffs originally included in the Second Amended Complaint, and 415 out of 423 Plaintiffs remaining in this case. (Doc. 338, ¶ 4).

Plaintiffs aver that becoming a part of OptumRx's network is necessary for pharmacies that wish to serve customers insured under OptumRx's pharmacy benefit plans. (Doc. 368, ¶ 19). Accordingly, Plaintiffs each have entered into various contracts to become a part of OptumRx's network, either directly or through third parties known as pharmacy services administrative organizations ("PSAOs"). (Doc. 36, ¶ 441; Doc. 337-3, ¶¶ 4-5; Doc. 338, ¶¶ 5, 19). Regardless of whether the pharmacy contracted directly with OptumRx or through a PSAO, the contractual relationship between every Plaintiff and OptumRx is governed first by a **_Provider Manual_**. (Doc. 337-3, at 3-4; Doc. 338, ¶ 5). The Provider Manual governs all pharmacies participating in OptumRx's network and accordingly, all the Plaintiffs remaining in this action. (Doc. 337-3, ¶ 8-10; Doc. 338, ¶ 6; Doc. 381, at 3-4). The Provider Manual sets out the parties' relationships and provides policies and procedures with which the pharmacies must comply. (Doc. 337-1, ¶¶ 12-13, at 19-194, 195-346, 348-470; Doc. 338, ¶ 7). The Provider

Manual is updated annually, with new versions superseding old ones. (Doc. 338, ¶ 8, Doc. 337-3, ¶¶ 8, 9, 16; Doc. 368, ¶ 8). Since July 2015, the Provider Manual has contained an arbitration provision requiring mandatory arbitration of all disputes. (Doc. 338, ¶ 8, Doc. 337-3, ¶¶ 8, 9, 16; Doc. 368, ¶ 8). At the time this action was filed, the arbitration provision required arbitration pursuant to California law; however, the current arbitration agreement does not specify choice of law. (Doc. 337-3, at 144-45, 368; Doc. 338, ¶ 9; Doc. 368, ¶ 9). According to OptumRx, the Provider Manual has been publicly available online since 2015 on a website specifically designed for pharmacies.[2] (Doc. 338, ¶ 13; Doc. 337-3, ¶ 9). The parties agree generally that OptumRx notifies pharmacies with updates to its Provider Manual.[3] (Doc. 337-4, ¶ 4; Doc. 338, ¶ 14; Doc. 368, ¶ 14; Doc. 381, at 10).

In addition to the Provider Manual, pharmacies become a part of OptumRx's network through **Provider Agreements**. (Doc. 337-3, ¶¶ 4, 5, 15; Doc. 338, ¶ 18; Doc. 368, ¶ 18). Because pharmacies have the option to join OptumRx directly or through PSAOs, the Provider Agreement may be signed by either the directly contracting pharmacy or the PSAO. (Doc. 337-3, ¶¶ 4, 5, 14, 15; Doc. 338, ¶ 19; Doc. 368, ¶ 19). About forty Plaintiffs have directly contracted with OptumRx through a Provider Agreement during at least part of the relevant time period. (Doc. 337-3, at 480-516; Doc. 338, ¶ 21; Doc. 368, ¶ 4). All direct Provider Agreements contain arbitration provisions requiring mandatory arbitration of all disputes. (Doc. 36, ¶ 450; Doc. 338, ¶ 22; Doc. 356-1-12; Doc. 368, ¶ 22). Pharmacies that join

---

[2] Plaintiffs admit only that the Provider Manual is published on OptumRx's website, not that it has been publicly available online since 2015. (Doc. 381, at 8).

[3] Plaintiffs admit only that OptumRx "sends out notices of Provider Manual updates to PSAOs and pharmacies." (Doc. 368, ¶ 14).

OptumRx's network through a PSAO are bound by the Provider Agreement because it is signed on their behalf by their PSAO.[4] (Doc. 337-3, at 480-516; Doc. 338, ¶¶ 25-31; Doc. 368, ¶ 25-26). "At least" 374 Plaintiffs "are or were" members of PSAOs that entered into Provider Agreements with OptumRx. (Doc. 337-3, at 480-516; Doc. 338, ¶ 25; Doc. 368, ¶ 25).

When a pharmacy joins a PSAO, they also enter into a **Participation Agreement** with the PSAO. (Doc. 338, ¶¶ 32, 33). This contract is signed by the PSAO and the pharmacy. (Doc. 338, ¶¶ 32, 33). According to OptumRx, by signing the Participation Agreement, a Plaintiff-pharmacy indicates "that they want to access the PSAO's existing Provider Agreements, and authoriz[es] the PSAO to negotiate and enter into Provider Agreements on the pharmacy's behalf." (Doc. 337-3, ¶¶ 5, 15, 16; Doc. 338, ¶ 32). Plaintiffs deny this statement without citing to the record, providing only that "[n]othing in any participation agreement allows any plaintiff to 'access the PSAO's existing Provider Agreements.' The delegation clauses in each specific Participation Agreement speaks for itself." (Doc. 368, ¶ 5). Defendants also assert that "[a]ll PSAO Provider Agreements at issue in this motion contained arbitration provisions requiring mandatory arbitration of all disputes." (Doc. 338, ¶ 37). Plaintiffs deny this statement, providing specifically that the Provider Agreements between OptumRx and the PSAOs Amerisource and Trinet do not contain arbitration agreements. (Doc. 368, ¶ 37).

On February 13, 2018, Plaintiffs filed the operative amended complaint. (Doc. 36). On March 13, 2018, OptumRx filed a motion to compel arbitration under Rule 12(b)(6). (Doc.

---

[4] Plaintiffs refute this point, arguing that the Plaintiff-pharmacies who are not signatories to the Provider Agreement are not bound by their terms. (Doc. 381, at 3).

42). On May 28, 2021, this Court denied OptumRx's motion to compel arbitration. *See Robert D. Mabe, Inc. v. Optum RX*, No. CV 3:17-1102, 2021 WL 2184764 (M.D. Pa. May 28, 2021), *vacated in part sub nom. Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307 (3d Cir. 2022). On August 2, 2022, the Third Circuit vacated and remanded, directing the parties to conduct limited discovery on issues of arbitrability. *See Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 330 (3d Cir. 2022). The Third Circuit also directed OptumRx to file a new motion to compel arbitration under the Rule 56 standard to determine whether Plaintiffs' "arguments can be supported by a developed record." *Mabe*, 43 F.4th at 330. This renewed motion to compel arbitration, filed by OptumRx with the benefit of discovery, is now before the Court. (Doc. 336).

OptumRx filed the instant motion to compel arbitration on April 24, 2023, along with a statement of facts, accompanying exhibits, and a brief in support. (Doc. 336; Doc. 337; Doc. 338). Also on April 24, 2023, Plaintiffs incorrectly filed a motion for summary judgment on the issue of arbitrability as a Statement of Facts, as well as a declaration in support of their motion, a brief in support, and accompanying exhibits. (Doc. 335; Doc. 335-1; Doc. 335-2; Doc. 335-3; Doc. 335-4; Doc. 335-5; Doc. 335-6).

On May 15, 2023, OptumRx filed a brief in opposition to Plaintiffs' motion for summary judgment. (Doc. 361). On May 30, 2023, Plaintiffs filed a reply brief. (Doc. 366). On June 5, 2023, Plaintiffs filed a brief in opposition to OptumRx's motion, Answer to OptumRx's State of Facts, and accompanying exhibits. (Doc. 368). On July 3, 2023, OptumRx filed a reply brief in support of their motion. (Doc. 377). The Court held oral argument on the outstanding motions on June 10, 2024. Accordingly, the motions are ripe for discussion.

II.   Legal Standards

A.  Motion to Compel Arbitration

"It is well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). However, "the cardinal principle of the law of arbitration is that 'under the [FAA, arbitration] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.'" *Gay v. CreditInform*, 511 F.3d 369, 388 (3d Cir. 2007) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). The Federal Arbitration Act provides that "[a] written provision in any. . .contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract. . .shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity. . ." 9 U.S.C. § 2. The Supreme Court has interpreted the FAA to require courts to "rigorously enforce arbitration agreements according to their terms, including terms that 'specify with whom the parties choose to arbitrate their disputes,' and 'the rules under which that arbitration will be conducted.'" *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013) (internal citations omitted); *see MacDonald v. CashCall, Inc*, 883 F.3d 220, 226 (3d Cir. 2018). "Federal law determines whether an issue governed by the FAA is referable to arbitration." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). "Questions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 n. 32 ("[The FAA] creates a body of federal

6

substantive law establishing and regulating the duty to honor an agreement to arbitrate....").

Section 2 of the FAA sets forth the basic rule of federal law:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Nevertheless, notwithstanding the supremacy of federal law, courts look to ordinary state law principles of contract formation to make this determination. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003); *Gay,* 511 F.3d at 388.

To compel arbitration, a court must determine (1) the validity of the arbitration agreement and (2) whether the dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *Bey v. Citi Health Card*, Civ. Action No. 15-6533, 2017 WL 2880581, at *4–5 (E.D. Pa. July 6, 2017). Under the Supreme Court's longstanding severability rule, "a party cannot avoid arbitration by attacking the contract containing the arbitration clause as a whole (the 'container contract'). Rather, the party opposing arbitration must challenge 'the arbitration clause itself.'" *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967). When "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is unenforceable based on a generally applicable contractual defense, such as unconscionability." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004); *see Gay,* 511 F.3d at 388 ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability,

7

may be applied to invalidate arbitration agreements without contravening [the FAA]." (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, (1996)).

"The Third Circuit has established a two-tiered framework for assessing motions to compel arbitration." *Lloyd v. Retail Equation, Inc.*, No. CV 21-17057, 2022 WL 18024204, at *4 (D.N.J. Dec. 29, 2022) (citing to *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013)). First, "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti*, 716 F.3d at 776 (quotation marks omitted); *see Lepore v. SelectQuote Ins. Servs., Inc.*, No. 22-3390, 2023 WL 8469761, at *2 (3d Cir. Dec. 7, 2023). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Guidotti*, 716 F.3d at 776 (quotation marks omitted). "To proceed otherwise would plainly disadvantage moving parties because they would be limited to the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents relied upon by the complaint, even when non-moving parties introduced and relied on other evidence in opposition." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 330 (3d Cir. 2022). After this, the court may entertain a renewed motion to compel arbitration, this time judging the motion under the summary judgment standard of Rule 56. *Guidotti*, 716 F.3d at 776. In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a

genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Somerset Consulting, LLC v. United Cap. Lenders, LLC,* 832 F. Supp. 2d 474 (E.D. Pa. 2011) (quoting 9 U.S.C. §4).

    B.  M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson,* 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

C. MASS ACTIONS

As recognized by the Third Circuit, "the mass action is less common than other forms of aggregate litigation[.]" *Mabe*, 43 F.4th at 318. A mass action is defined in the Class Action Fairness Act ("CAFA") as:

> any civil action [. . .] in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements of $75,000 under § 1332(a).

28 U.S.C. § 1332(d)(11)(B)(i) (internal citations omitted).

10

"In essence, mass actions are collective actions that utilize large-scale joinder or other consolidation mechanisms rather than class certification pursuant to Rule 23." *Mabe*, 43 F.4th at 318. The Supreme Court has interpreted "100 or more persons" "not [as] unspecified individuals who have no actual participation in the suit" but as named parties "proposing to join as plaintiffs in a single action." *Mississippi ex rel. Hood v. AU Optronics Corp.,* 571 U.S. 161, 169 (2014).

To qualify as a mass action, there must be some showing of a proposal for a joint trial implicating the group of plaintiffs. "[A] proposal for a joint trial may be either explicit or implicit." *Ramirez v. Vintage Pharms.*, LLC, 852 F.3d 324, 329 (3d Cir. 2017). An explicit proposal for joint trial may be a "clear contextual request" in any filing by the group of plaintiffs, or an oral reference. *Ramirez*, 852 F.3d at 329. An implicit proposal "may be found when all of the circumstances of the action, including the language of the complaint and the structure of the action, lead to the assumption that the claims will be tried jointly." *Ramirez*, 852 F.3d at 329. Accordingly, Plaintiffs cannot simply bring separate suits that, when considered together, result in over 100 plaintiffs asserting the same claim and then consider the actions together to be a mass action because this fails to meet the requirement of a proposal for joint trial. *See Abrahamsen v. ConocoPhillips, Co.*, 503 F. App'x 157, 160 (3d Cir. 2012). After reviewing the language and legislative history of the CAFA, the Third Circuit concluded this Court has jurisdiction to hear this mass action. *See Mabe*, 43 F.4th at 323-24 ("Congress's explicit purpose in enacting CAFA supports a conclusion that the District Court had original jurisdiction here" and "[b]ecause this mass action otherwise meets the provisions of paragraphs (2) through (10) [of the CAFA], the District Court properly exercised jurisdiction.").

11

## III.   DISCUSSION

"[A]rbitration agreements must be enforced according to their terms like any other contract would be."[5] *Mabe*, 43 F.4th at 325 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2008). Federal law "strongly favor[s] the enforcement of arbitration provisions" and imposes a "'presumption of arbitrability,'" on parties who enter into contracts containing arbitration provisions. *Sidorek v. Chesapeake Appalachia, LLC*, 2014 WL 1218893, at *2 (M.D. Pa. Mar. 24, 2014). Where an arbitration agreement has been included in a contract it "must be enforced according to [its] terms like any other contract would be." *Mabe*, 43 F.4th at 325. However, like any other contract, "generally applicable contract defenses such as fraud, duress, [and] unconscionability," apply. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Here, the parties dispute whether Plaintiffs must be compelled to arbitrate their claims under any of the operative agreements produced in the discovery ordered by the Third Circuit. This includes the 2023 Provider Manual, each of the Provider Agreements signed by OptumRx and the directly contracted Plaintiff-pharmacies, and the Provider Agreements signed by OptumRx and the PSAOs contracting on behalf of the rest of the Plaintiffs. However, as a primary matter, the Court must address Plaintiffs' contention that OptumRx has waived its ability to enforce these operative agreements. From there, the Court must

---

[5] During oral argument and in their briefs, the parties agree that either Illinois or California may govern this dispute. (Doc. 335-5, at 7). Because the Provider Manual in effect when Plaintiffs filed their second amended complaint contained a California choice of law provision, and the current Provider Manual does not contain a choice of law provision, the Court will apply California law in resolving this dispute. (Doc. 335-5, at 7; Doc. 337-3, at 414; Doc. 381, ¶¶ 11, 17).

determine whether enforcing the arbitration provisions in any of the operative agreements would be unconscionable.

For the following reasons, the Court finds both that OptumRx has not waived its right to compel arbitration under the currently operative agreements and that under both the Provider Manual and Provider Agreements, Plaintiffs are bound to arbitrate their claims with OptumRx. Accordingly, pursuant the terms of the 2023 Provider Manual, which supersedes all other agreements at issue in this case, OptumRx's motion to compel will be **GRANTED**. (Doc. 336). Plaintiffs' motion for summary judgment will be **DENIED**. (Doc. 335).

### A. DID OPTUMRX WAIVE ITS ABILITY TO COMPEL ARBITRATION UNDER THE OPERATIVE CONTRACTS?

Plaintiffs' motion for summary judgment reads like a response to OptumRx's 2018 motion to compel arbitration. (Doc. 42; Doc. 335; Doc. 335-5). OptumRx's 2018 motion to compel arbitration was focused on the arbitration clauses contained in various Provider Agreements entered into by OptumRx's predecessor Catamaran's and Plaintiffs. (Doc. 42; Doc. 358, at 8). Pointing to these agreements, Plaintiffs argue that OptumRx seeks to compel arbitration under Provider Agreements that are "clearly superseded by the Alternative Dispute Resolution provision inserted by Defendant in its 2015 Catamaran Provider Manual." (Doc. 335-5, at 8). Further, in a footnote and without citing to any caselaw, Plaintiffs assert that it is "too late" for OptumRx to move to compel arbitration under any of the newly discovered contracts produced in discovery, including any of the agreements operative today. (Doc. 335-5, at 9 n.1).

Arguing first that "Third Circuit has made clear that arguments raised without authority in footnotes are insufficient and forfeited," OptumRx responds to Plaintiffs'

contentions by acknowledging its previous motion to compel arbitration, which was asserted under the Rule 12 standard.[6] (Doc. 42; Doc. 361, at 5); *see United States v. Yung,* 37 F.4th 70, 81 (3d Cir. 2022). OptumRx explains that it cabined its previous arguments to the contracts that formed the basis of Plaintiffs' claims and were most heavily referenced in and attached to Plaintiffs' second amended complaint. (Doc. 36; Doc. 42; Doc. 361, at 11 n.2). OptumRx's argument continues as follows:

> As directed by the Third Circuit, OptumRx pursued discovery for seven months and now has filed a new motion to compel arbitration based on a developed record. That record includes many additional contracts that Plaintiffs did not refer to in their complaint (so were not properly before the Court in a Rule 12 motion). OptumRx's new motion relies on all of the parties' contracts, and it complies with the Third Circuit's directions and the schedule set by this Court.

> (Doc. 361, at 5).

Thus, OptumRx argues, Plaintiffs' "flawed" argument that the parties now are relitigating OptumRx's previous motion to compel arbitration is incorrect as it ignores the procedural posture of this case and extensive discovery done on the issue of arbitrability. (Doc. 361, at 14, 16). The Court agrees.

First, Plaintiffs' waiver argument has little bearing on this matter as it was "tuck[ed] into a single footnote, without supporting authority or analysis." *Yung,* 37 F.4th at 81 (citing *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.,* 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)). Second, Plaintiffs seemingly acknowledge that newer contracts and the arbitration provisions therein are now operative and should form the basis of any newly asserted motion to compel

---

[6] Before Plaintiffs filed their second amended complaint, OptumRx also filed a motion to compel arbitration in 2017 that was rendered moot by Plaintiffs' new pleading papers. (Doc. 25).

14

arbitration. (Doc. 42; Doc. 335-5, at 8). Plaintiffs' argument for summary judgment is that the Provider Manual "clearly supersede[s]" the agreements OptumRx attempted to compel arbitration under in its first motion to compel arbitration. (Doc. 42; Doc. 335-5, at 8). Third, the Court agrees with OptumRx that Plaintiffs' waiver argument relies on a misreading of the Third Circuit's previous decision in this case. *See Mabe*, 43 F.4th at 325. In addressing OptumRx's previous motion to compel under the Rule 12 standard, the Third Circuit recognized that OptumRx's "motion was [] limited to the pharmacies' complaint and its contracts with the pharmacies that formed the basis thereof." *Mabe*, 43 F.4th at 325. When directing the parties to conduct discovery on the issue of arbitrability, the Third Circuit did not state that this discovery was to be constrained to the contracts in the second amended complaint or to just the agreements discussed in OptumRx's Rule 12 motion. *Mabe*, 43 F.4th at 317. The Third Circuit instead broadly stated the district court "should have allowed discovery limited to *the question of arbitrability* and then provided Optum an opportunity to renew its motion." *Mabe*, 43 F.4th at 317 (emphasis added). Accordingly, as directed, the parties engaged in discovery on the issue of arbitrability and numerous additional agreements were produced. This movement of the case is aligned with the demands of *Guidotti*, which requires that:

> if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then *the parties should be entitled to discovery on the question of arbitrability* before a court entertains further briefing on [the] question.

716 F.3d at 776. (internal citations omitted) (emphasis added).

To adopt Plaintiffs' narrow reading of this precedent would permit parties to evade arbitration by failing to include relevant and operative arbitration agreements in their pleading papers

15

and would negate the benefits of discovery on the issue of arbitrability. Through the discovery directed by the Third Circuit, OptumRx has identified numerous additional agreements which contain enforceable arbitration provisions.[7] (Doc. 337-3, ¶¶ 8-13; Doc. 338, ¶¶ 9, 37; Doc. 368, ¶ 9; Doc. 361, at 5, 9). Accordingly, Plaintiffs' motion for summary judgment, which is based on agreements no longer relevant to the instant dispute, is **DENIED**. (Doc. 335).

### B. PLAINTIFFS MUST ARBITRATE THEIR CLAIMS PURSUANT THE OPERATIVE PROVIDER MANUALS

It is undisputed that the Provider Manual governs the relationship between Plaintiffs and OptumRx. (Doc. 36, ¶ 441; Doc. 337-3, ¶¶ 8-13; Doc. 338, ¶¶ 6-8; Doc. 368, ¶¶ 6-8). Since 2015, two years before this litigation was commenced, the Provider Manual has contained some form of an arbitration provision. (Doc. 338, ¶ 9; Doc. 368, ¶ 9; Doc. 361, at 9). At all times since Plaintiffs first filed their lawsuit, it is undisputed that this arbitration provision has required arbitration of any and all disputes between the parties, "including, but not limited to all questions of arbitrability, the existence, validity, scope, interpretation, or termination of

---

[7] In their reply brief to their motion for summary judgment, Plaintiffs also attempt to argue that OptumRx waived its right to arbitrate generally. (Doc. 366, at 14-15). This is not so. OptumRx has consistently asserted its right to arbitrate Plaintiffs' claims, first in their Rule 12 motions to compel arbitration and now with their renewed Rule 56 motion to compel arbitration. (Doc. 25; Doc. 42; Doc. 336). Further, the cases cited by Plaintiff to support this position are easily distinguished. (Doc. 366, at 15); *see e.g., Burnett v. National Association of Realtors*, 615 F. Supp. 3d 948, 955-56 (W.D. Mo. 2022) (finding defendant waived their right to arbitration where they first attempted to litigate the merits of plaintiffs' claims, stating "A party cannot keep a contractual right to arbitration in its back pocket and pull it out only when it is ready for a do over."); *see also e.g., Easterday v. USPack Logistics, LLC*, No. CV1507559RBKAMD, 2020 WL 7137859 (D.N.J. Dec. 4, 2020) (explaining that defendant was barred from making a newly raised argument to arbitrate claims through the FAA on appeal).

the Agreement or Pharmacy Manual or any term thereof prior to the inception of any litigation or arbitration." (Doc. 338, ¶ 9; Doc. 368, ¶ 9). Further, Plaintiffs aver that "[p]er all of the Provider Manuals," "in the event of a conflict between the Provider Agreement and the Provider Manual, the Provider Manual shall prevail." (Doc. 335-5, at 8). Accordingly, for the purpose of OptumRx's motion to compel arbitration, the Provider Manual governs. (Doc. 336).

Plaintiffs contend they are not subject to the demands of the Provider Manual because they lacked notice of the agreement to arbitrate therein. (Doc. 337, at 21; Doc. 368-1, at 26). OptumRx refutes this contention, arguing that "evidence [] shows that every Plaintiff had notice of the Provider Manual terms, including the arbitration clauses." (Doc. 337, at 14; Doc. 338 ¶¶ 13-16; Doc. 337-3, ¶¶ 8, 9). According to Plaintiffs, "simply supplying a manual or handbook that contains an arbitration clause does not create an agreement to arbitrate." (Doc. 368-1, at 26). Looking at the record in its entirety, the Court disagrees and concludes Plaintiffs had sufficient notice of the Provider Manual.

A review of the Provider Manual, particularly its Table of Contents, makes clear that the document is not simply a "manual" or a "handbook," but a contractual document that outlines obligations by the parties subject to its demands.[8] (Doc. 337-3, at 23-26). Aside from calling the document a "handbook" for the sake of their notice argument, Plaintiffs do not dispute that the Provider Manual applies to all Plaintiffs and contains "policies and

---

[8] In particular, the Table of Contents makes clear there are portions of the Provider Manual detailing "Pharmacy Network Participation Requirements," as well as "Alternative Dispute Resolution and Arbitration." (Doc. 337-3, at 25).

procedures that pharmacies must comply with in order to participate in OptumRx's network." (Doc. 338, ¶¶ 7-9; Doc. 368, ¶¶ 7-9). The Provider Manual is undisputably a binding contract.

In California, "the party who prepared and submitted the contract has the burden of showing the other party had notice of the contract terms at issue, while the party asserting unconscionability has the burden of establishing it." *The McCaffrey Grp., Inc. v. Superior Ct.,* 224 Cal. App. 4th 1330, 1348, 169 Cal. Rptr. 3d 766 (2014). Here, the undisputed record reflects that during the relevant time period, every time OptumRx updated its Provider Manual the PSAOs received an email notification directing them to "immediately" notify its members of the changes. (Doc. 337, at 14; Doc. 338, ¶¶ 13-16). Plaintiffs admit that they were routinely notified of updates to the Provider Manual. (Doc. 337-4, at 7, 11, 20; Doc. 368, ¶ 14; Doc. 368-1, at 26). The record reflects that these updates include "[a]dded language to the Alternative Dispute Resolution section." (Doc. 337-4, at 7, 11, 20; Doc. 368, ¶ 14; Doc. 368-1, at 26). Further, it is undisputed that during the relevant period, the Provider Manuals have been publicly available online. (Doc. 337, at 21; Doc. 337-3, ¶ 9; Doc. 338, ¶ 13). Taken together, this evidence is enough for OptumRx to meet its burden of demonstrating that Plaintiffs had notice of the Provider Manuals. *See OptumRx v. South Miami Pharmacy, Inc.,* No. 2022-005838-CA-01, 2023 WL 3790628, at *6 (Fla. Cir. Ct. June 01, 2023) (finding Plaintiff-Pharmacy had sufficient notice of OptumRx's Provider Manual such that it was bound to arbitrate its claims against OptumRx, stating "OptumRx presented evidence showing pharmacies had access to the Provider Manual."). Plaintiffs have failed to submit or point to evidence that supports their position that they lacked notice of the arbitration provision

18

therein such that enforcing it would be unconscionable. [9] Accordingly, on this basis OptumRx's motion to compel arbitration is **GRANTED** and the parties will be directed to resolve their disputes pursuant to the 2023 Provider Manual.[10] (Doc. 336); *see Optumrx v. Odedra Enterprises*, Inc., No. 30202201252611CUPTCJ, 2023 WL 377318 (Cal. Super. Jan. 20, 2023) (enforcing motion to compel arbitration under the Provider Manual and finding it would not be unconscionable to do so); *cf. Copper Bend Pharmacy, Inc. v. OptumRx*, 2023 IL

---

[9] The Court acknowledges Plaintiffs' citation to the "unpublished/noncitable" California Court of Appeal case *Platt, LLC v. OptumRx, Inc.*, No. A163061, 2023 WL 2507259 (Cal. Ct. App. Mar. 15, 2023). Whereas the *Platt* court concluded that enforcing the Provider Manual would be unconscionable because "there was no negotiation or meaningful choice over the Manual" and "the pharmacies did not sign any version of the Manual," this Court disagrees with this conclusion, especially considering the discovery that has been introduced in this case. *Platt*, 2023 WL 2507259, at *6. Plaintiffs in this case chose to become a part of a PSAO and thus a part of OptumRx's network. In that way, they choose to be subject to the Provider Manual, gain its benefits, and have acknowledged "policies and procedures that pharmacies must comply with in order to participate in OptumRx's network." (Doc. 338, ¶ 7; Doc. 368, ¶ 7). Further, Plaintiffs were regularly updated of changes to the Provider Manual, and even if they did not have the opportunity to unilaterally change the terms of the Provider Manual, the contracts are terminable at will. (Doc. 337-3, at 21; Doc. 356-19; Doc. 356-20; Doc. 356-21; Doc. 356-22). Finding that these factors support the conclusion that enforcing the Provider Manual is not unconscionable is not a novel conclusion. Other courts have rejected Plaintiffs' argument that OptumRx's ability to unilaterally modify the Provider Manual is unconscionable. See *Copper Bend Pharmacy Inc. v. OptumRx*, No. 5-22-0211, 2023 WL 2964485, at *16 (Apr. 14, 2023); see also *South Miami Pharmacy, Inc.*, 2023 WL 3790628, at *6; *see also Odedra Enterprises*, Inc., 2023 WL 377318, at *3-4; *see also Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 162 Cal. Rptr. 3d 545 (2013), *as modified* (Oct. 2, 2013) (unilateral modification provision did not render agreement substantively unconscionable). Lastly, even if enforcing the Provider Manuals was found to be unconscionable, this Court would still conclude the Plaintiffs are bound to arbitrate their claims with OptumRx under the Provider Agreements, so ultimately, OptumRx's motion would be nonetheless granted.

[10] This is consistent with Plaintiffs' admission that "At the time this lawsuit was filed on June 23, 2017, and at all times since, the operative arbitration clause was the one in the Optum Provider Manual." (Doc. 368-1, ¶ 37).

App (5th) 220211-U, at *15, *appeal denied*, 221 N.E.3d 374 (Ill. 2023) (finding that enforcing the same Provider Manuals now before the Court would not be procedurally unconscionable).

    C.  Even if Plaintiffs were not Subject to Arbitration under the Provider Manual, they Would be Compelled to Arbitrate their Claims Pursuant the Provider Agreements

       To the extent any inconsistencies exist between the Provider Manual and the Provider Agreements, the parties agree the Provider Manual controls. (Doc. 335-5, at 8; Doc. 368-1, ¶ 37; Doc. 377, at 9-10); s*ee also Odedra Enterprises*, Inc., 2023 WL 377318, at *3. Thus, there is no confusion as to which document controls here. *See Odedra Enterprises*, Inc., 2023 WL 377318, at *3. However, even having found sufficient grounds to compel arbitration based on the Provider Manuals, this Court will still consider the parties' arguments as they relate to the Provider Agreements.

       According to Plaintiffs, enforcing the Provider Agreements would be procedurally and substantively unconscionable because Plaintiffs are not parties to the Provider Agreements, OptumRx impedes Plaintiffs from accessing their Provider Agreements, there is a significant cost-price disparity, and the arbitration procedures at issue here are unfair, as they only allow Plaintiffs limited discovery. (Doc. 368-1, at 26-31, 35). OptumRx asserts that the record does not reflect that OptumRx had any part in impeding Plaintiffs' access to their Provider Agreements, but even if there were some obstruction in Plaintiffs' access to these agreements, it would be because of the actions of their PSAOs, not OptumRx. (Doc. 337, at 22-23). Also, pointing to agency principles, OptumRx avers that Plaintiffs are bound by their PSAOs' Provider Agreements even if they lacked notice of the arbitration provisions within them. (Doc. 337, at 28). Further, OptumRx argues that the newly operative agreements do not contain unfair practices and that Plaintiffs have failed to support their arbitration cost

arguments with citations to the record. (Doc. 377, at 14, 19-20). Lastly, OptumRx argues that the doctrines of estoppel and ratification independently refute Plaintiffs' unconscionability arguments. (Doc. 337, at 32). This Court will address each argument in turn.

### 1. The PSAOs Act as Plaintiffs' Agents

According to OptumRx, Plaintiffs are bound by the Provider Agreements whether or not they had notice of the arbitration provisions contained therein because their PSAOs acted as their agents when entering into these agreements. (Doc. 337, at 28). Because the majority of the Provider Agreements at issue in this case are signed by OptumRx and PSAOs representing Plaintiffs, the Court's first inquiry must be whether these agreements are binding on the implicated pharmacies through an agency relationship. *See Copper Bend Pharmacy,* 2023 IL App (5th) 220211-U, at *7 (looking at the same agreements and PSAO-pharmacy relationships as the ones before the Court here and stating "an agency relationship must be established to bind plaintiffs to the [Provider Agreements]. . ."). Despite California law's strong presumption toward resolving disputes through arbitration, parties can only be required to arbitrate when they have agreed to do so. *Cohen v. TNP 2008 Participating Notes Program, LLC,* 31 Cal. App. 5th 840, 859, 243 Cal. Rptr. 3d 340, 358 (2019). "'Arbitration is a matter of consent . . . not coercion.'" *Cohen,* 243 Cal. Rptr. 3d at 358. As such, "[e]ven the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement." *Suh v. Superior Ct.,* 181 Cal. App. 4th 1504, 1512, 105 Cal. Rptr. 3d 585, 593 (2010). Accordingly, to find Plaintiffs are subject to Provider Agreements signed by PSAOs and OptumRx, the Court must conclude an agency relationship exists between the PSAOs and the Plaintiff-pharmacies that they have contracted with it.

21

Plaintiffs contend that "Optum's motion focuses on the PSAOs' agency relationship with the Plaintiffs while ignoring the critical issue: whether the Provider Agreement prohibits PSAOs from giving the [Provider Agreement] to the individual pharmacies without first gaining [Defendant's] permission to do so." (Doc. 368-1, at 16) (internal citations omitted). However, in their second amended complaint, Plaintiffs themselves allege that "the PSAO generally signs the 'Provider Agreement' as the agent of its member pharmacies." (Doc. 36, ¶ 449; Doc. 338, ¶ 31). Regardless, the PSAO-pharmacy relationship is governed by Participation Agreements, which generally authorize the PSAO to negotiate and enter into Provider Agreements on the pharmacy's behalf. (Doc. 338, ¶ 32). It is through these Participation Agreement that the agency relationship is born.

"Every California case finding nonsignatories to be bound to arbitrate is based on facts that demonstrate, in one way or another, the signatory's implicit authority to act on behalf of the nonsignatory." *Jensen v. U-Haul Co. of California,* 18 Cal. App. 5th 295, 304, 226 Cal. Rptr. 3d 797 (2017). "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." Cal. Civ. Code § 2295. Relevant here, PSAOs are "collective bargaining groups of contracted pharmacies *that negotiate contracts with other entities* in the pharmaceutical supply and payment chain." 1 CA Antitrust and Unfair Competition Law § 21.03 (2023) (emphasis added); *see also Platt, LLC v. OptumRx, Inc.,* No. A163061, 2023 WL 2507259, at *15 (Cal. Ct. App. Mar. 15, 2023) ("PSAOs are the recognized agents of independent pharmacies in negotiating contracts with PBMs. Indeed, that is one of the principal purposes of a PSAO—to take over the contracting function for, and on behalf, of its member pharmacies."); *see also Wholesale All., LLC v. Express Scripts, Inc.,* 366 F. Supp. 3d 1069, 1073 (E.D. Mo. 2019) ("PSAOs provide administrative services to

pharmacies, including processing claims, providing operational support, and negotiating contracts with insurance companies and pharmacy benefit managers ("PBMs"). There are 22 PSAOs nationwide.). This definition of a PSAO suggests that one of its core functions is to act as a pharmacy's agent for the purpose of entering into contracts on their behalf. Further, it is well established that "[u]nder black-letter agency law, a principal need not have notice to be bound by his agent." *Park Irmat Drug Corp. v. OptumRx, Inc.*, 152 F. Supp. 3d 127, 135 (S.D.N.Y. 2016); *see also In re Rotavirus Vaccines Antitrust Litig.*, 30 F.4th 148 (3d Cir. 2022) ("Pennsylvania contract law recognizes 'five theories for binding nonsignatories to arbitration agreements,' including agency" (citing *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 170 (3d Cir. 2009)); *see also Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) (explaining that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles). This principle extends to arbitration, as an agent may legally enter into an agreement to arbitrate on behalf another entity. *See Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 248 (2017); *see also Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825 (N.D. Cal. 2007) ("agents of a signatory can compel the other signatory to arbitrate"); *see also Ruiz v. Podolsky*, 50 Cal. 4th 838, 852 (2010) (arbitration agreements may bind nonsignatory third parties when negotiated through an agent).

Here, the majority of Plaintiffs have entered into Participation Agreements with PSAOs that authorize the PSAO to negotiate and enter into Provider Agreements on the

pharmacy's behalf. [11] (Doc. 338, ¶¶ 32, 33; Doc. 341, at 5; Doc. 341-1, at 6; Doc. 342-4). Accordingly, the arbitration provisions in the Provider Agreements entered into by PSAOs are enforceable against each Plaintiff contracted with a PSAO. Looking at the same agreements at issue here, other courts have come to the same conclusion, finding "each of the Pharmacy Plaintiffs is bound by the respective [Provider] Agreements, including the binding arbitration provisions contained therein," because PSAOs "entered into [Provider] Agreements on behalf of their respective Pharmacy Plaintiff principals." *AAMH Pharmaceutical Inc v. Optumrx INC.*, No. 56201800515296CUATVT, 2019 WL 13152208, at *5 (Cal. Super. Apr. 22, 2019); *see also Park Irmat Drug Corp.*, 152 F. Supp. 3d at 135. The fact that the Plaintiffs aver that they did not read these agreements is of little consequence, especially given the fact that this litigation put Plaintiffs on notice of the arbitration provisions in the contracts Plaintiffs seek to enforce. (Doc. 368-9, ¶ 7); *cf. Lawson v. DoorDash, Inc.*, 2023 WL 2782314, at *3 (N.D. Cal. Jan. 31, 2023) ("Even if true that Plaintiff did not personally read the Terms and Conditions, his attorney indisputably did. Plaintiff is bound by that conduct."). Accordingly, the Court agrees with OptumRx's statement that because "Plaintiffs have cited no case holding that an agreement entered into by an agent is not binding on the principal merely because the principal does not have access to the terms of the agreement," and because "such a ruling would vitiate the concept of agency and destroy the ability of third parties—like OptumRx—to rely on the agent's authority when entering into contracts,"

---

[11] For example, the Participation Agreement signed by pharmacies contracting with PSAO LEADER contains the following provision: "Each Participant must participate in each and every Group contract accepted by LEADER." (Doc. 342-4, at 1). A "Group" is defined as "groups providing pharmaceutical benefits," such as OptumRx. (Doc. 342-4, at 1).

"Plaintiffs are bound by their PSAOs' Provider Agreements, including agreements to arbitrate, whether Plaintiffs had notice of these specific terms or not." (Doc. 368-1, at 31-32).

Plaintiffs cite a number of cases in attempt to avoid this outcome. After a review of these cases, this Court agrees with OptumRx's characterization of these cases:

> Plaintiffs' cases are distinguishable. *In Timmerman v. Grain Exchange LLC*, 394 Ill. App. 3d 189 (2009) and *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 158 (3d Cir. 2009), the plaintiffs could not be bound by an arbitration agreement held by someone who was not their agent. In *Pillar Project AG v. Payward Ventures, Inc.*, 64 Cal. App. 5th 671 (2021), and *Braundmeier v. Ancestry.com Operations, Inc.*, 2022 WL 17176524 (N.D. Ill. Nov. 23, 2022), the purported agent lacked authority to contract on the plaintiff's behalf—but here Plaintiffs' PSAOs had authority.

(Doc. 377, at 18).

As noted by OptumRx, this case is different than those cited by Plaintiffs because here, Plaintiffs entered into relationships with their PSAOs for the very purpose of the PSAOs signing contracts on their behalf, as evidenced by the fact that contracting on behalf of pharmacies is one of the the primary functions of a PSAO. *See Wholesale All., LLC*, 366 F. Supp. 3d at 1073 ("PSAOs provide administrative services to pharmacies, including. . .negotiating contracts with. . .pharmacy benefit managers ("PBMs")); *see also Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, No. CV 3:15-290, 2017 WL 1196513, at *1 (M.D. Pa. Mar. 31, 2017) ("The relationship between the defendant, a PBM [such as OptumRx], and independent pharmacies is contractual in nature, but the defendant does not directly negotiate with pharmacies. The contract is negotiated through a pharmacy services administration organization ("PSAO") serving as the pharmacy's agent. The plaintiff's relationship with the defendant is based on contracts, also known as provider agreements, that the defendant negotiated with a PSAO." (internal citations omitted)). Accordingly, based

25

on the principles of agency, even if Plaintiffs were not bound to arbitrate their claims under the Provider Manuals, those contracted with a PSAO would be bound to the arbitration provisions contained in the Provider Agreements.

### 2.  Enforcing the Provider Agreements is Not Unconscionable

"[G]enerally applicable contract defenses, such as ... unconscionability, may be applied to invalidate arbitration agreements without contravening the [Federal Arbitration Act] or California law." *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 66, 270 Cal. Rptr. 3d 786 (2020), *as modified* (Nov. 3, 2020) (internal citations omitted). A contract is "not unconscionable merely because the parties to it are unequal in bargaining position." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) (internal citations omitted). As the party raising the issue, Plaintiffs bear the burden of demonstrating unconscionability. *See Guidotti*, 716 F.3d at 774 n.5; *see also Cabatit v. Sunnova Energy Corp.*, 60 Cal. App. 5th 317, 322, 274 Cal. Rptr. 3d 720 (2020) ("The party opposing a motion to compel arbitration bears the burden of showing unconscionability."). Under California law, a court must find evidence of both substantive and procedural unconscionability to invalidate a contract. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 353 P.3d 741 (2015); *see also Cabatit*, 60 Cal. App. 5th at 322 ("The trial court may exercise its discretion to refuse to enforce a contract if it is both procedurally and substantively unconscionable."). Here, Plaintiffs argue that enforcing the Provider Agreements would be both procedurally and substantively unconscionable.

### a.  Enforcing the Provider Agreements is Not Procedurally Unconscionable

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999); *see also*

26

*Anthony Int'l, L.P.*, 341 F.3d at 265. Finding "procedural unconscionability requires oppression or surprise." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 247, 145 Cal. Rptr. 3d 514, 282 P.3d 1217 (2012); *see also Copper Bend Pharmacy*, 2023 IL App (5th) 220211-U at *13. "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise [occurs] where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 247. Here, Plaintiffs argue that enforcing the arbitration provisions contained in the Provider Agreements would be procedurally unconscionable because they were never granted access to these agreements. (Doc. 368-1, at 20). Plaintiffs further aver that OptumRx directly impeded their access to the Provider Agreements. (Doc. 368-1, at 20). According to Plaintiffs, "[n]ot only were the PSAOs prohibited from sharing the [Provider Agreements] in their entirety, [OptumRx] did not permit a PSAO, with [OptumRx's] advance permission, to disclose the arbitration clause to a pharmacy." (Doc. 368-1, at 21). Plaintiffs point to deposition testimony from Kerri Tanner, OptumRx's Senior Vice President of Pharmacy Management, in which she states that the Provider Agreements are "confidential and proprietary," and that "[i]f the pharmacy is not a signer on the document, and it was not an executing party, the pharmacy would not have received [a copy of the Provider Agreement]," to corroborate their position. (Doc. 354-4, at 25; Doc. 368-1, at 20).

Supported by the deposition testimony of OptumRx's Director of Pharmacy Provider Relations and Communications, OptumRx maintains that it "did not impede Plaintiffs' access to [the] Provider Agreements." (Doc. 337, at 22; Doc. 337-6, ¶ 12). Per OptumRx's view, in choosing which PSAO to join and subsequently signing a Participation Agreement with that PSAO, Plaintiffs decided "whether they wanted to see their Provider Agreements."

(Doc. 337, at 25). In addressing this same issue under the Rule 12 standard, the Third Circuit concluded that ambiguous language in the agreements before the court was sufficient to suggest there may be some procedural unconscionability at play. *Mabe*, 43 F.4th at 328-31. However, the benefit of discovery has eliminated this ambiguity in OptumRx's favor.

First, forty-one Plaintiffs signed direct Provider Agreements with OptumRx that include arbitration provisions, so these Plaintiffs do not have any argument that they lacked access or notice of the requirement to arbitrate as nonsignatories.[12] (Doc. 337, at 23; Doc. 338, ¶¶ 21-22; Doc. 368, ¶¶ 21-22). Undoubtedly, these Plaintiffs are subject to the demands of the Provider Agreements they signed. Second, regarding the rest of Plaintiffs, the record does not reflect that OptumRx impeded any Plaintiff-pharmacy's access to their Provider Agreements. Most of the Provider Agreements at issue contain no confidentiality provision prohibiting either the PSAO or OptumRx from sharing the contracts with the implicated pharmacy or pharmacies.[13] (Doc. 355; Doc. 356). Additionally, in addressing the deposition testimony highlighted by Plaintiffs, OptumRx points out that the cited testimony was about "one of Catamaran's Provider Agreements that applies to plaintiffs not at issue here." (Doc. 377, at 15). Moreover, OptumRx asserts that Plaintiffs' argument and evidence "ignore[s] the current PSAO Provider Agreements, even though these contracts control this motion." (Doc. 377, at 15). A review of the record confirms what OptumRx has posited; Plaintiffs have failed

---

[12] The Provider Agreement between OptumRx and Plaintiff Redners does not contain an arbitration provision. (Doc. 347). However, Redners is still subject to arbitration pursuant the Provider Manual.

[13] As the Third Circuit recognized, even the subset of Provider Agreements that do contain some sort of confidentiality provision state elsewhere in the contracts that "pharmacies are expected to have access to but not share the Provider Agreement's terms" with others. *Mabe*, 43 F.4th at 328-29.

to point to any record evidence supporting their argument that OptumRx impeded any of the current Plaintiffs from accessing any of the Provider Agreements now before the Court. Instead, the record contains numerous Participation Agreements entered into by Plaintiffs, which, as OptumRx argues, "show that Plaintiff[s] and their PSAOs—not OptumRx—controlled Plaintiffs' access to their Provider Agreements." (Doc. 337-3, ¶¶ 15, 16 Doc. 338, ¶¶ 32, 33; Doc. 341; Doc. 342; Doc. 343; Doc. 344). The record also reflects, and the parties do not dispute, that "if any PSAO-affiliated pharmacy asks OptumRx for a copy of its PSAO Provider Agreement, throughout the relevant period OptumRx's practice has been to direct the pharmacy to speak to its PSAO." (Doc. 337-3, ¶ 22; Doc. 338, ¶ 40; Doc. 368, ¶ 40). Therefore, the record supports OptumRx's conclusion that Plaintiffs' access to the Provider Agreements was governed by their PSAOs, not OptumRx.

Third, as detailed at length *supra*, even if OptumRx did obstruct Plaintiffs' access to their Provider Agreements, because the PSAOs acted as their agents in contracting with OptumRx, Plaintiffs are nonetheless bound by the Provider Agreements.[14] As provided by OptumRx, "Plaintiffs can and do choose whether and when to be part of a PSAO, as well as

---

[14] Still, the Court considers Plaintiffs' argument that The Restatement of Agency supports their conclusion that they could not have notice of the arbitration provisions contained in the Provider Agreements because the PSAOs had a duty not to disclose them to the pharmacies. *See* Restatement (Third) of Agency § 5.03 ("For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal, unless the agent: . . . (b) is subject to a duty to another not to disclose the fact to the principal."). However, the record does not reflect this type of duty and even if enforcing some of Plaintiffs' Provider Agreements, was found to be procedurally unconscionable, which Plaintiffs have not pointed to record evidence indicating that is the case, this Court's finding on estoppel and ratification would nonetheless render the Provider Agreements enforceable.

which PSAO to join."[15] (Doc. 338, ¶¶ 28, 31; Doc. 368, ¶ 28). However, in doing so, they are

bound to the terms agreed upon with that PSAO in their Participation Agreement and by that

PSAO when contracting with other entities, including OptumRx. In this case, for each

Plaintiff, this has resulted in agreeing to arbitration. As such, this Court finds no procedural

unconscionability related to the enforcement of the Provider Agreements.

        b.  <u>Compelling Arbitration is Not Substantively Unconscionable under the Provider Agreements or the Provider Manual</u> [16]

Plaintiffs claim that requiring them to arbitrate their claims against OptumRx would

be substantively unconscionable because the cost of arbitration is prohibitive compared to the

---

[15] In responding to this Statement of Fact, Plaintiffs reply, "that each Plaintiff had its own reasons for joining a PSAO." (Doc. 368, ¶ 28). In denying portion of OptumRx's Statement of Fact, Plaintiffs assert that they also deny the statements made in the Hyman Declaration, in which the business considerations, advantages, and choices for pharmacies to join PSAOs are explained. However, Plaintiffs fail to offer any contradicting evidence for this denial.

[16] OptumRx objects to the Court's use of Plaintiffs' demonstrative exhibit titled "Catamaran Direct Contracts—average annual income," which was provided to the Court during the June 10, 2024 oral argument on the parties' pending motions. (Doc. 405). In consideration of OptumRx's objection, the Court notifies the parties that it has refrained from using the exhibit. Plaintiff has opposed OptumRx's objection, stating "Defendant Optum Rx's evidentiary objection to Slide #28 presented at the June 10 hearing is specious and should be summarily rejected because the slide is admissible under Federal Rule of Evidence 1006." (Doc. 406, at 1). However, under Federal Rule of Evidence 403, Plaintiffs are not entitled to admit summary evidence that is *misleading* or that inaccurately represents the facts that the admission purports to summarize. Because the Plaintiffs have excluded a vast majority of Plaintiffs from their exhibit and has purportedly calculated the financial information provided based on unrelated claims, OptumRx's objection is sustained. *United States v. Harmon*, No. 18-2683, 2022 WL 17369594 (3d Cir. Dec. 2, 2022), *cert. denied sub nom. Little v. United States*, 143 S. Ct. 2692, 216 L. Ed. 2d 1257 (2023) (recognizing a trial court enjoys discretion when determining whether summary exhibits will be helpful or unduly misleading).

cost of litigation and that the arbitration procedures OptumRx demands are unfair.[17] (Doc. 368-1). Arguing otherwise, OptumRx states:

> Plaintiffs cannot prove substantive unconscionability. Plaintiffs were given every opportunity to come up with evidence supporting their assertion that arbitration would be prohibitively expensive, but 132 Plaintiffs did not produce any evidence regarding their financial condition, and the remainder produced only limited, cherry-picked evidence that fails to carry their burden—and instead shows that Plaintiffs are thriving, multi-million-dollar businesses that easily could afford to arbitrate.

(Doc. 337, at 10).

OptumRx also argues that Plaintiffs' arguments on prohibitive cost rest on an unsupported assertion in their opposition that "[t]he costs of a single arbitration would likely exceed $50,000" and that "[a]lthough Plaintiffs must make a 'case-by-case' showing, *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 96 (2003), only a subset of Plaintiffs provided any evidence whatsoever of their ability to pay for arbitration." (Doc. 377, at 20). In making this argument, OptumRx asserts that only 256 out of 415 Plaintiffs submitted affidavits claiming inability to pay. (Doc. 377, at 21).

An agreement that is substantively unconscionable is grossly favorable to one side. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). In assessing substantive unconscionability, California "courts often look to whether the agreement meets a minimum

---

[17] In this section, Plaintiffs attempt to "incorporate by reference" "an earlier brief," which Plaintiffs notably fail to cite directly. (Doc. 368-1, at 31). Regardless, Local Rule 7.8 provides, in relevant part, that "[n]o brief may incorporate by reference all or any portion of any other brief." *See Crestwood Membranes, Inc. v. Constant Servs., Inc.*, No. 3:15-CV-537, 2018 WL 493257, at *3 n.1 (M.D. Pa. Jan. 19, 2018). Accordingly, the Court will not ferret out this "earlier brief" for the sake of Plaintiffs' substantive unconscionability arguments and, in accordance with the Local Rules, will not consider it incorporated by reference; nor will the Court do so for any other additional materials Plaintiffs seek to incorporate by reference.

level of fairness[.]" *Davis v. Kozak*, 53 Cal. App. 5th 897, 910, 267 Cal. Rptr. 3d 927 (2020).

"Substantive unconscionability is concerned not with a simple old-fashioned bad bargain but

with terms that are unreasonably favorable to the more powerful party." *Kozak*, 53 Cal. App.

5th at 910 (internal citation omitted). "[T]he paramount consideration in assessing

[substantive] conscionability is mutuality." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App.

4th 638, 657, 9 Cal. Rptr. 3d 422 (2004). "A contract term is not substantively unconscionable

when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to

"shock the conscience."'" *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.

4th 223, 246, 282 P.3d 1217 (2012). "[A] party seeking to invalidate an arbitration agreement

on the ground that arbitration would be prohibitively expensive bears the burden of showing

the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 81. The standard is

"exceedingly high." *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 630, 634 (2021). It requires a

showing of a "complete picture" of the inability to pay. *Sanford v. Bracewell* LLP, No. CV 13-

1205, 2017 WL 2797869, at *6-8 (E.D. Pa. June 27, 2017); *see also Hall v. Treasure Bay Virgin

Islands Corp.*, 371 F. App'x 14 311, 313 (3d Cir. 2010) (a party "must proffer some credible

and substantiated evidence of that party's financial situation as well as the specific costs of

arbitration"). Here, Plaintiffs have failed to meet this burden.

     First, the record does not contain any evidence that provides the Court with an

understanding of the costs associated with arbitration in this case. Plaintiffs "have the burden

… to show the projected fees that would apply to their specific arbitrations." *Blair v. Scott

Specialty Gases*, 283 F.3d 595, 607 (3d Cir. 2002). While Plaintiffs cite the record in estimating

their recovery for the claims asserted in their case. They proffer no evidence in support of their

conclusion that "[t]he costs of a single arbitration would likely exceed $50,000." (Doc. 368-1,

at 25, 33; Doc. 377, at 20). As OptumRx indicates, "Plaintiffs also fail to address the new, cost-effective arbitration procedures for smaller disputes in OptumRx's updated Provider Manual." (Doc. 337-3, 144-46; Doc. 377, at 20).

Second, Plaintiffs have not pointed to any clear record evidence that informs the Court of Plaintiffs' financial situations. OptumRx asserts only a subset of Plaintiffs provided any evidence whatsoever of their ability to pay for arbitration. (Doc. 377, at 20-21; Doc. 378). Of those who have, OptumRx claims that the affidavits submitted are "conclusory" and "self-serving," as the record reflects a large disparity between the taxable income reported by the Plaintiff-pharmacies and "evidence [that] shows their businesses rake in millions per year."[18] (Doc. 350-6; Doc. 377, at 21-22). Plaintiffs respond to these concerns by maintaining they "have submitted affidavits showing their income during the 2012-2017 period leading up to this lawsuit." (Doc. 368-1, at 34). Yet, when making this statement, Plaintiffs fail to cite to the record. (Doc. 368-1, at 34). Instead, Plaintiffs cite to a document that shows "Plaintiffs' average incomes for the period in question." (Doc. 368-10). However, this document does not include every Plaintiff and does not provide concrete details that could be used to fact check

---

[18] In making this argument, OptumRx points to multiple years of tax returns reflecting the gross profits of Plaintiff-pharmacy Concord, which exceed three million dollars. (Doc. 350-8, at 83, 89, 95; Doc. 377, at 22). OptumRx compares this evidence to an affidavit submitted by Concord in which they report their "annual profit/loss" to be under $50,000. (Doc. 368-9, at 128; Doc. 377, at 22). OptumRx also argues that Plaintiffs have failed to definitively state that this litigation is funded by each pharmacy individually, and not by an organization "of more than a thousand pharmacies and related associations" called PUNCH. (Doc. 351, at 83-84; Doc. 358, at 36). However, the record does not conclusively support that PUNCH, or any Plaintiff for that matter, will surely "foot the bill for arbitration." The record does reflect that PUNCH has been involved with this litigation, but neither party has pointed to any definitive record evidence supporting the conclusion that any specific entity will "foot the bill" for arbitration. (Doc. 351, at 88).

the data provided, such as dates, tax information, or other metrics by which Plaintiffs' "average income" was measured. (Doc. 368-10). Accordingly, the record before the Court does not allow for a sweeping finding that each of the over 400 Plaintiffs subject to this motion cannot afford to arbitrate their claims such that enforcing the arbitration provisions before the Court would be unconscionable. As noted by OptumRx, the Court must assess this issue on a case-by-case basis, and it is Plaintiffs' burden to demonstrate that the terms of the agreements implicated here shock the conscience. (Doc. 377, at 21); *Gutierrez*, 114 Cal. App. 4th at 96. A case-by-case showing of Plaintiffs' ability to pay for the costs associated with arbitration cannot be shown here. Thus, "the 'risk' that [Plaintiffs] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 82 (2000).

Third, as far as the challenged arbitration procedures go, OptumRx asserts "there has been no showing that the limited discovery allowed in the arbitration clause is insufficient." (Doc. 377, at 23); *Copper Bend Pharmacy*, 2023 IL App (5th) 220211-U, at *17. Whereas Plaintiffs take issue with the fact that under the old arbitration agreements Plaintiffs were permitted "no fact discovery," the current Provider Manuals which govern this motion do allow for discovery. (Doc. 337-3, at 145; Doc. 368-1, at 36; Doc. 377, at 23). Thus, this argument is moot given this Court will be enforcing the arbitration provision in the currently operative, discovery-permitting Provider Manual.

Lastly, "[t]he prevailing view [in California] is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 960, 68 Cal. Rptr. 3d 872 (2007). Even if the Court were to find that

requiring Plaintiffs to arbitrate their claims was substantively unconscionable, because this court has found there is no procedural unconscionability in enforcing either the Provider Manual or the Provider Agreements, Plaintiffs have not met their burden of demonstrating enforcing the Provider Manual or the Provider Agreements would be unconscionable. *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 60 Cal. Rptr. 2d 138 (1997), *as modified* (Feb. 10, 1997); *see also Odedra Enterprises*, Inc., 2023 WL 377318, at *4 (finding that Plaintiffs failed to establish the cost of arbitration was cost prohibitive while looking at the same or substantially similar contracts to the ones at bar). Considering *supra*, Plaintiffs have failed to point to conclusive record evidence supporting their claims of unconscionability. As any doubt as to arbitrability is to be "resolved in favor of arbitration," the Court will compel arbitration despite Plaintiffs' unconscionability arguments. *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### 3. The Doctrines of Estoppel and Ratification Further Support Enforcing Arbitration Against Plaintiffs

Putting aside the Court's findings *supra*, according to OptumRx, the doctrines of estoppel and ratification negate all of Plaintiffs' unconscionability claims. (Doc. 337, at 32). Because "[f]or years, Plaintiffs have submitted thousands of claims and accepted millions of dollars in reimbursements from OptumRx under the very same Provider Agreements and Provider Manuals," and Plaintiffs are now "suing to enforce these same contracts," OptumRx argues "Plaintiffs should not be permitted to obtain these substantial benefits (and seek even more through this case), while avoiding their own obligation to arbitrate under the very same contracts." (Doc. 337, at 10). Plaintiffs insist that OptumRx's ratification and estoppel

arguments fail because "[s]imply accepting benefits under the contract does not 'ratify' the unconscionable provision." (Doc. 368-1, at 37).

"Equitable estoppel precludes a party from asserting rights they otherwise would have had against another when their own conduct renders assertion of those rights inequitable." *Soltero v. Precise Distribution, Inc.*, No. D083308, 2024 WL 3039929, at *2 (Cal. Ct. App. June 18, 2024). Under the doctrine of equitable estoppel, a party cannot avoid arbitration while suing to enforce provisions of the same contract. *See Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1072-73, 70 Cal. Rptr. 3d 605 (2008); *see also JSM Tuscany, LLC v. Superior Ct.*, 193 Cal. App. 4th 1222, 1238, 123 Cal. Rptr. 3d 429 (2011) ("California courts, applying federal law, have embraced the estoppel theory, holding that a signatory plaintiff who sues on a written contract containing an arbitration clause may be estopped from denying arbitration . . ."). This is because a "party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate." *Boucher v. All. Title Co.*, 127 Cal. App. 4th 262, 272 (2005). Even when the party seeking to avoid arbitration is a nonsignatory, a party cannot avoid arbitration and then seek to benefit from the rights contained therein. *See Crowley***,** 158 Cal. App. 4th at 1072-73; *see also JSM Tuscany,* 193 Cal. App. 4th at 1238. Similarly, the doctrine of ratification applies when a party to a contract retains the benefit of said contract. *See Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1533 (3d Cir. 1997). In contract disputes, ratification is an affirmative defense. *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 773 (3d Cir. 2007), *as amended* (May 31, 2007). Under the theory of ratification, "a promise can be enforced even though the underlying contract is voidable if it is ratified by the promisor." *Jakimas*, 485 F.3d at 782. "Ratification results [even] if a party who executed a contract under duress accepts the benefits flowing from it, or remains silent,

or acquiesces in the contract for any considerable length of time after the party has the opportunity to annul or avoid the contract." *Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, 388 F. Supp. 3d 417, 432 (E.D. Pa. 2019) (quoting *Nat'l Auto Brokers Corp. v. Aleeda Dev. Corp.*, 243 Pa. Super. 101, 114, 364 A.2d 470, 476 (1976)). Accordingly, a party who continues to accept the benefits of a contract in effect has ratified that contract and cannot later contest its validity.

Under the principles of both equitable estoppel and ratification, Plaintiffs cannot both benefit from and seek to enforce either the Provider Manual or Provider Agreements and then repudiate these same agreements to avoid arbitration. *See Platt, LLC v. OptumRx, Inc.*, No. A163061, 2023 WL 2507259, at *6 (Cal. Ct. App. Mar. 15, 2023) ("The trial court concluded, and the pharmacies do not dispute, that they are equitably estopped from denying the applicability of the [Provider] Manuals since they alleged a cause of action for breach of contract."). As Plaintiffs have cited to no compelling caselaw to the contrary, the Court finds its decision to compel arbitration under these agreements is supported by both doctrines.[19]

## IV.   CONCLUSION

Based on the forgoing, Plaintiffs' motion for summary judgment on the issue of arbitrability is **DENIED**. (Doc. 335). OptumRx's motion to compel arbitration is

---

[19] To support their argument that OptumRx's ratification and estoppel arguments fail, Plaintiffs cite a case from the Northern District of Indiana, which they incorrectly cite as a case from Illinois, that addresses neither ratification nor estoppel. (Doc. 368-1, at 37); *see DeMidio v. REV Recreation Grp., Inc.*, No. 1:17-CV-326, 2018 WL 1744958 (N.D. Ind. Apr. 10, 2018) (incorrectly cited as *DeMidio v. REV Recreation Group, Inc.*, 2018 WL 1744958 at *8-9 (N.D. Ill. 2018)). Plaintiffs also argue that OptumRx's arguments fail because "in Illinois, equitable estoppel only exists 'where a person … induces a second person to rely, to his or her detriment, on the statements or conduct of the first person.' *Ervin v. Nokia, Inc.*, 349 Ill.App.3d 508, 812 N.E.2d 534, 541 (2004)." (Doc. 368-1, at 37-38). However, Plaintiffs fail to argue how this sentiment applies to the facts at bar and under California law. Accordingly, these arguments remain unpersuasive.

**GRANTED**. (Doc. 336). Plaintiffs are compelled to arbitrate their claims with OptumRx in accordance with the operative of the Provider Manual.

An appropriate Order follows.


Dated: July 22, 2024                           *s/ Karoline Mehalchick*
                                               **KAROLINE MEHALCHICK**
                                               **United States District Judge**