## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT D. MABE et al.,

        Plaintiff,

  v.

OPTUMRX,

        Defendant.

CIVIL ACTION NO. 3:17-CV-01102

(MEHALCHICK, J.)

### <u>MEMORANDUM</u>

Before the Court is a mass action that was filed on June 22, 2017, by over 400 Plaintiff-pharmacies against pharmacy benefits manager, OptumRx. (Doc. 1; Doc. 36). The operative second amended complaint was filed on February 13, 2018. (Doc. 36). Therein, Plaintiffs allege breach of contract and breach of the duties of good faith and fair dealing claims, as well as violations of various state statutes. (Doc. 36). Presently before the Court are cross motions for summary judgment filed by OptumRx and eight non-arbitrable pharmacy-plaintiffs ("Plaintiffs"). (Doc. 257; Doc. 260). Also before the Court is a motion to sever filed by Plaintiffs. (Doc. 309). For the following reasons, Plaintiffs' motion for summary judgment will be **DENIED without prejudice**. (Doc. 260). OptumRx's motion for summary judgment will be **DENIED without prejudice in part** and **GRANTED in part**. (Doc. 257). Plaintiffs' motion to sever will be **DENIED as MOOT**.[1] (Doc. 309).

---

[1] On August 23, 2022, Plaintiffs filed a motion to sever (Doc. 309), in which they seek to sever their claims from the other 400 arbitrable plaintiffs for purposes of trial. These eight plaintiffs were not subject to the motion to compel arbitration recently granted by this Court. (Doc. 410). In light of the granting of the motion to compel, the only remaining plaintiffs in this matter are these eight plaintiffs; there remain no other plaintiffs from which to sever them. As such, Plaintiff's motion to sever is **DENIED** as **MOOT**. (Doc. 309).

## I.  BACKGROUND AND PROCEDURAL HISTORY

The following factual background is taken from the parties' statements of material facts and answers thereto.[2] OptumRx is a pharmacy benefits manager that administers prescription drug programs on behalf of health insurance plans. (Doc. 266, ¶ 1; Doc. 266-1, ¶ 2). In 2015, OptumRx merged with Catamaran Corporation Inc. ("Catamaran"). (Doc. 266, ¶ 4; Doc. 266-1, ¶ 3; Doc. 282, ¶ 12; Doc. 279, ¶ 178). The plaintiffs in this action consist of over 400 pharmacies that have contracted with Catamaran, and through the 2015 merger OptumRx, either directly or through pharmacy services administration organizations ("PSAOs"). (Doc. 36; Doc. 266, ¶¶ 4-6; Doc. 266-1, ¶¶ 7-9; Doc. 279, ¶ 180). The non-arbitrable Plaintiffs subject to this motion own and operate retail or long-term care pharmacies and fill prescription drugs for members of health plans in OptumRx's network. (Doc. 36; Doc. 266, ¶ 6; Doc. 279, ¶ 180). Plaintiffs' contracts with OptumRx include both Provider Manuals and Provider Agreements that together form the contracts at issue before the Court ("the Contracts"). (Doc. 266-2; Doc. 266-3; Doc. 266-6; Doc. 266-6; Doc. 266-7; Doc. 266-8; Doc. 266-9; Doc. 266-12; Doc. 266-13; Doc. 266-14; Doc. 279, ¶¶ 184-86). While specific terms of the Contracts differ slightly between Catamaran and OptumRx and among Plaintiffs, for the purpose of the instant motions they are sufficiently similar. (Doc. 266-2; Doc. 266-3; Doc. 266-6; Doc. 266-21; Doc. 266-22; Doc. 266-23; Doc. 266-24). Pursuant the second amended complaint,

---

[2] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to the non-moving party with respect to each motion.

Plaintiffs bring their claims under the 2013 Catamaran Manual ("the Manual"). (Doc. 36, ¶ 456; Doc. 266-2).

At issue before the Court is whether Plaintiffs were properly reimbursed by OptumRx for their network pharmacy prescription drug claims under the terms of the Contracts. (Doc. 257; Doc. 260). The Contracts require that Plaintiffs be paid for the prescription drugs they dispense to OptumRx's members using the "lesser of" multiple pricing points. (Doc. 266, ¶ 22; Doc. 266-2, at 4; Doc. 282, ¶ 39). The Manual includes the following payment terms:

> Claims submitted by Provider ... are reimbursed for prescription drugs at the lesser of the plan or network Average Wholesale Price (AWP) discount or other referenced based on pricing; plus or minus a discount or maximum allowable cost (MAC) (when applicable for prescription drug products); the Provider's submitted gross amount due; the Provider's Usual and Customary price (U&C) that would be given under the same circumstances if the member did not possess prescription benefit coverage; or submitted ingredient cost; and the applicable plan or network dispensing fee including taxes if applicable.
>
> * * *
>
> Catamaran shall utilize client or plan parameters, Medi-Span or other national source, and internal processes as a reference but not as the sole determinant of price.
>
> (Doc. 266, ¶ 22; Doc. 266-2, at 4).

The Manual defines Maximum Allowable Cost ("MAC") as the "the maximum allowable cost for pharmaceutical products."[3] (Doc. 266, ¶ 27; Doc. 266-2, at 5; Doc. 276, ¶ 27). The

---

[3] The Catamaran Provider Manuals governed between 2013-2015 and OptumRx's Provider Manuals governed from 2016 to when the instant motions were filed. (Doc. 266, ¶¶ 17-26, 27, 28). Both sets of contracts contain similar payment terms. (Doc. 266, ¶¶ 22, 25). The 2016 OptumRx Provider Manual includes the following payment terms:

> Claims submitted by Network Pharmacy Provider for Members ... are reimbursed at the lesser of the following: the Benefit Plan or network A WP discount or other referenced based pricing plus applicable dispensing fee; MAC (when applicable for Covered Prescription Services); Network Pharmacy Provider's Submitted Cost Amount; Network Pharmacy Provider's U&C

Manual also states that "[t]he MAC (Maximum Allowable Cost) is developed by Catamaran and may be amended at any time at its sole discretion." (Doc. 266-2, at 5). The MAC prices produced by OptumRx are intended to reflect the market price for generic drugs and are set using industry benchmarks. (Doc. 263-11, at 29; Doc. 266, ¶¶ 32, 49; Doc. 282, ¶ 30). That said, there is a question of material fact as to whether OptumRx is obligated under the

---

which would be given under the same circumstances if the Member did not possess prescription benefit coverage; or the submitted ingredient cost.

(Doc. 266, ¶ 25).

The 2016 through the 2020 OptumRx Provider Manuals define MAC as the "maximum allowable cost" and contain the following language:

**Maximum Allowable Cost (MAC)**:

MAC for pharmaceutical products is developed by Administrator based upon information provided by Medi-Span or any other nationally recognized pricing source selected by Administrator and may be amended from time-to-time at its sole discretion in accordance with applicable law. Administrator determines MAC pricing based on a review of the following: pricing information from a nationally recognized pricing service, one or more national drug wholesalers and/or manufacturers, and the publicly available results of CMS' survey of retail prices. Administrator reserves the right to update its MAC pricing methodology and to use alternative, reputable sources at its discretion.

***

To assure the MAC list accurately reflects market pricing and the availability of Generic Drugs, Administrator utilizes multiple sources to determine MAC pricing. The sources include deidentified market pricing benchmark data such as A WP and WAC, wholesaler information on market availability and pharmacy information from inquiries. A synthesis of these and other sources helps create a market based MAC price for Generic Drugs on the MAC list ... Administrator reserves the right to update its MAC pricing methodology and to use alternative, reputable sources at its discretion.

(Doc. 266, ¶ 32; Doc. 266-9, at 13; Doc. 276, ¶¶ 28, 32).

4

Contracts to set each MAC price based on the national market prices and wholesale market data. (Doc. 282, ¶ 41; Doc. 295, ¶ 25).

The parties agree, and the record supports, that the Contracts allow OptumRx to pay Plaintiffs using either MAC or non-MAC pricing depending on the circumstances. (Doc. 265, at 23; Doc. 266, ¶¶ 21, 41; Doc. 266-2; Doc. 283, at 40; Doc. 283-1). Under the Health Insurance Portability and Accountability Act ("HIPAA"), the National Council of Prescription Drug Programs Telecommunication Standards has implemented disclosure requirements for pharmacy benefits managers such as OptumRx. (Doc. 283-1, ¶ 6). These disclosure requirements require OptumRx to disclose whether its reimbursements were paid using MAC pricing or another metric. (Doc. 283-1, ¶ 6). This considered, missing from the record is how exactly Plaintiffs' claims were reimbursed by OptumRx. (Doc. 283-1, ¶¶ 7-8).

On August 26, 2021, OptumRx filed its motion for summary judgment, a redacted brief in support of its motion, and a redacted statement of facts. (Doc. 257; Doc. 258; Doc. 259). On October 1, 2021, upon stipulation of the parties, Plaintiffs filed their brief in opposition and their answer to OptumRx's statement of material facts. (Doc. 275; Doc. 276). On October 29, 2021, OptumRx filed a reply brief to its motion. (Doc. 289). Unredacted versions of each of these filings and Plaintiffs' were subsequently filed under seal, along with OptumRx's accompanying exhibits. (Doc. 265; Doc. 266; Doc. 282; Doc. 283; Doc. 294). On November 2, 2021, OptumRx filed "Defendant's Response to Non-Arbitrable Plaintiffs' Counterstatement of Facts in Opposition to Defendant's Motion for Summary Judgment," under seal. (Doc. 295).

On August 27, 2021, Plaintiffs filed their motion for partial summary judgment and a motion to file their accompanying documents under seal. (Doc. 260; Doc. 261). On August 30, 2024, Plaintiffs filed their unredacted and subsequently sealed statement of material facts, brief in support, and accompanying exhibits. (Doc. 262; Doc. 263). On October 1, 2021, OptumRx filed a redacted response to Plaintiffs' motion for partial summary judgment. (Doc. 274). On October 5, 2021, OptumRx filed an unredacted response to Plaintiffs' motion for partial summary judgment and a response to Plaintiffs' statement of material facts and accompanying exhibits which were subsequently sealed. (Doc. 278; Doc. 279). Accordingly, the motions for summary judgment have been fully briefed and are now ripe for disposition.

## II.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[4] *Velentzas v. U.S.*, No. 4: CV-07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007)) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Goode,* 241 F. App'x at 868 (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such

---

[4] *See also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

With respect to cross-motions for summary judgment, "[e]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)). However, a federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell,* 206 F.3d at 278.

## III.   DISCUSSION

OptumRx moves for summary judgment on Plaintiffs' breach of contract and breach of implied covenant of good faith and fair dealing claims, as well as Plaintiffs' claim for violation of Louisiana Revised Statute § 22.1863. (Doc. 258, at 2). Plaintiffs move for partial summary judgment on their breach of contract claim, raising two issues of contract interpretation. (Doc. 260-1, at 13).

### A.   OPTUMRX'S MOTION FOR SUMMARY JUDGMENT

#### 1.  Breach of Contract

In Count I and Count II of the second amended complaint, Plaintiffs allege breach of contract claims. (Doc. 36, at 93-101). OptumRx moves for summary judgment on these claims because, in its view, the record shows OptumRx complied with the Contracts and that the Contracts do not contain the terms Plaintiffs allege OptumRx violated. (Doc. 265, at 2).

Central to OptumRx's arguments and Plaintiffs' claims are the drug prescription reimbursement and MAC pricing provisions of the Contracts. (Doc. 265, at 2). OptumRx avers "[t]he express terms of the Contract do not require that all transactions be reimbursed based on MAC and payments that are based on non-MAC prices or Contract Rates are fully consistent with the terms of the Contract." (Doc. 265, at 23). Further, OptumRx asserts that when it did pay and set MAC prices, it complied with the terms of the Contracts which allow OptumRx to use its own "internal processes" to set reimbursement and MAC prices. (Doc. 265, at 35). Plaintiffs respond that the record supports OptumRx "overwhelmingly paid generic drug claims at the MAC price and [OptumRx] has failed to present any evidence as to which of plaintiffs' claims were not paid at a MAC price." (Doc. 283, at 16). Further, that OptumRx "never denies that it paid Plaintiffs the MAC price for generic drugs the vast majority of the time, nor has it identified a single claim at issue that was not paid at the MAC price." (Doc. 283, at 16). Thus, according to Plaintiffs, by paying them MAC prices below market value and at unreasonably low rates, OptumRx violated the Contracts. (Doc. 283, at 16-17, 28).

The parties do not dispute that Illinois law governs the Catamaran Provider Manual and that California law governs the OptumRx Provider Manual. (Doc. 263, at 12; Doc. 265, at 15 n.6). Accordingly, the Court will apply Illinois and California law to this dispute. To prevail on a breach of contract claim under both California and Illinois law, Plaintiffs must establish the existence of a contract; that they performed all contractual obligations; that OptumRx breached the contract; and resulting damages. *See Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 96 Cal. Rptr. 3d 813, 840 (2009) (to establish a

breach of contract claim, Plaintiff must "demonstrate the existence of a contract that they performed or were excused from performing, that the contract was breached and that damages resulted from the breach."); *see also Wieskamp v. Norris, 2024 IL App (4th) 231417-U* ("To succeed on a breach of contract claim, a plaintiff must plead and prove (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach."). The parties disagree as to whether Plaintiffs have satisfied the breach element of their claim. (Doc. 265, at 8; Doc. 283, at 39).

Even having considered the extensive record before it, this Court cannot determine whether OptumRx breached the Contracts without evidence of how Plaintiffs were reimbursed for their claims. (Doc. 283, at 17; Doc. 283-1, ¶¶ 7-8). While the record contains various iterations of the Contracts, expert testimony that assumes Plaintiffs were paid the MAC price, expert testimony explaining that pharmacy benefits managers such as OptumRx use "several formulas" including "MAC pricing terms" to reimburse pharmacies, and testimony supporting that OptumRx is not required to pay pharmacies the MAC price in all circumstances, the record contains no information regarding how OptumRx reimbursed Plaintiffs. (Doc. 266-2; Doc. 266-3; Doc. 266-9; Doc. 266-14, ¶¶ 7,8; Doc. 266-18, at 5-7; Doc. 283-1, ¶¶ 5, 7, 8). The record reflects generally that OptumRx "paid over 90% of generic drug prescriptions at the MAC price," but the record contains no reimbursement data related to claims forming the basis of this lawsuit. (Doc. 262, ¶ 91; Doc. 263-11, at 14; Doc. 282, at 32

¶37). Based on the parties briefing, it appears that Plaintiffs have sought this information, but OptumRx has refused to disclose it.[5] (Doc. 283, at 16-19; Doc. 283-1, ¶¶ 7, 8).

Both parties acknowledge that the Contracts dictate "reimbursement to a pharmacy for dispensing a generic drug prescription *may or may not be based on MAC pricing*." (emphasis added). (Doc. 265, at 10; Doc. 283, at 16; Doc. 294, at 2). OptumRx seeks summary judgment on the basis that Plaintiffs have failed to produce evidence that OptumRx did not comply with the actual terms of the Contracts by reimbursing them improperly. (Doc. 265, at 34). Using that same logic, Plaintiffs contend that this Court should assume OptumRx paid Plaintiffs' the MAC price because "[OptumRx] never denies that it paid Plaintiffs the MAC price for generic drugs the vast majority of the time, nor has it identified a single claim at issue that was not paid at the MAC price." (Doc. 283, at 16). Plaintiffs further explain that "[OptumRx] fail[ed] to produce the precise basis of reimbursement for each claim. Where, as here, [OptumRx] controls the definitive evidence and has failed to produce it, Plaintiffs need only establish a basis for a reasoned conclusion as to the extent of injury, at which point the burden shifts to [OptumRx] to refute it." (Doc. 283, at 17). Still, without evidence of how Plaintiffs were reimbursed, it is unclear to the Court how to determine whether Plaintiffs have "established a basis for a reasoned conclusion as to the extent of injury." (Doc. 283, at 17). Without this evidence, the Court cannot discern that Plaintiffs were paid unreasonably lower

---

[5] Plaintiffs recognize OptumRx's failure to disclose the sought after reimbursement information as "gamesmanship," averring "by objecting to Plaintiffs' discovery request that it identify which claims were not paid at a MAC price, and then moving for summary judgment on grounds that Plaintiffs cannot precisely identify that was or was not paid at MAC, [OptumRx] is 'playing fast and loose with the courts.'" (Doc. 283, at 20). This Court appreciates the difficult position OptumRx's refusal to disclose its reimbursement information has put Plaintiffs in.

rates than what is required by the Contracts. This is especially true especially given the fact that OptumRx allegedly uses market-based benchmarks to formulate its MAC prices, as is discussed in the parties' papers and the record.[6] (Doc. 265, at 10; Doc. 283, at 16; Doc. 294, at 2).

OptumRx responds that while Plaintiffs make conclusory assertions that the relevant claim reimbursement information is "solely in OptumRx's custody or peculiarly within its knowledge, Plaintiffs cite no factual evidence establishing such a fact." (Doc. 294, at 13). However, this is untrue, as expert testimony introduced by Plaintiffs supports their conclusion that since OptumRx decides the basis for their reimbursements, only OptumRx can supply this information. (Doc. 283-1, ¶¶ 7-8). OptumRx also attempts to explain that it "refused to produce information relating to claims that paid on a basis other than MAC because such discovery is irrelevant, given that the [second amended complaint] 'solely concerns the MAC price.'" (Doc. 294, at 14). This explanation, however, does not square with OptumRx's argument that "Plaintiffs have not provided any evidence that OptumRx's reimbursements for the prescriptions at issue was incorrect under the pricing methodologies set forth in the Contract" and that "Plaintiffs merely assume, without proof and contrary to the terms of the Contract, that they were entitled to receive a MAC price for all prescriptions." (Doc. 265, at 24; Doc. 294, at 9-10). The Court is unable to reconcile how Plaintiffs would have been able to provide any evidence that OptumRx's reimbursements were incorrect without knowing the precise basis of reimbursement for each of their claims. (Doc. 282, ¶¶ 89-90; Doc. 283, at 16-

---

[6] The Court acknowledges that OptumRx disputes Plaintiffs' statement that the MAC prices must be market based. (Doc. 279, ¶ 2). However, the Court finds a determination on this issue to be better resolved after the record reflects how Plaintiffs' claims were paid.

17). OptumRx's responses to Plaintiffs' arguments are therefore frustrated by the fact that it refuses to produce any responsive information regarding the metrics it used to calculate Plaintiffs reimbursements. (Doc. 282, ¶¶ 89-90; Doc. 283, at 16-17). Given the fact that Plaintiffs' claims are dependent on them being paid the MAC price, this Court finds OptumRx's objections to producing this information questionable at best, suspicious at worst. Only with this information can the Court "verify that [Plaintiffs] were reimbursed in accordance with the contractual terms and obligations" at issue now before the Court. (Doc. 276, ¶¶ 41, 85; Doc. 294, at 10).

    While the parties have supplied the Court with numerous arguments and justifications for their respective interpretations of the Contracts and have pointed to various pieces of record evidence to support their positions regarding whether OptumRx breached the Contracts, the Court is at a loss for how to determine Plaintiffs' breach of contract claims without knowing how Plaintiffs' claims were paid.[7] Ultimately, Plaintiffs ask that this Court assume they were paid the MAC price for their claims because OptumRx has failed to deny it. (Doc. 283, at 16-19). OptumRx asks this Court assume Plaintiffs were properly paid because "Plaintiffs have not provided any evidence that OptumRx's reimbursements for the

---

[7] This analysis is further complicated by the fact that the Court has been unable to locate several of the sources cited by the parties on the docket, including various alleged declarations and requests for production. After reviewing thousands of documents and scouring the docket, the Court was unable to locate certain documents cited by Plaintiffs in their "Response And Counterstatement Of Undisputed Material Facts In Opposition To Defendant's Motion For Summary Judgment." (Doc. 282, ¶ 21). Relevant to this motion, these include the following: the Declaration of Mark R. Cuker In Support of Plaintiffs' Opposition to Defendant OptumRx's Motion for Summary Judgement, Defendant's Answers and Objections to Plaintiffs' Sixth Supplemental Interrogatories and Request for Production of Documents; and letters from Plaintiffs' counsel to Defendants' counsel demanding the production of this information. (Doc. 282, ¶ 21).

prescriptions at issue was incorrect." (Doc. 265, at 24). Neither alternative satisfies this Court. Accordingly, at this juncture, the Court will **DENY without prejudice** OptumRx's motion for summary judgment on Plaintiffs' breach of contract claims. (Doc. 36, at 93-101; Doc. 257). The Court will also order limited discovery on the claim reimbursement information in the custody of OptumRx.[8] This evidence will be used to, once and for all, determine whether Plaintiffs were paid using MAC pricing. Only then will this Court be able to determine whether Plaintiffs' reimbursements were incorrect under the pricing methodologies set forth in the Contract and whether Plaintiffs have satisfied their burden as to their breach of contract claim against OptumRx.

### 2.  Breach of Implied Duty of Good Faith and Fair Dealing

In Counts III through Count V of their second amended complaint, Plaintiffs allege breach of good faith and fair dealing claims. (Doc. 36, at 101-109). To allege a claim for breach of the implied covenant of good faith and fair dealing Plaintiffs must allege the existence of an enforceable contract; that OptumRx breached a specific duty imposed by the contract other than the covenant of good faith and fair dealing; that OptumRx failed to exercise its

---

[8] Without citing to them on the docket, OptumRx concedes that Plaintiffs have filed two motions to compel discovery in this matter. (Doc. 294, at 14 n.9). According to OptumRx, "neither included the Non-MAC pricing it now claims necessary and purportedly only in OptumRx's custody." (Doc. 294, at 14 n.9). Plaintiffs argue that they did request this information and that OptumRx is legally obligated to maintain it. (Doc. 282, ¶¶ 89-95; Doc. 284, at 18). However, as explained *supra*, the Court cannot locate the record sources Plaintiffs cite to in support of this proposition. (Doc. 282, ¶ 21). Because this Court favors deciding cases on the merits, and given the seriousness of the claims at bar, the Court opts to reopen discovery so that information regarding how Plaintiffs' prescription drug claims were paid can be used to assess the viability of their breach of contract claims. *See Postie v. Frederick*, No. 3:14-CV-00317, 2018 WL 1750758, at *7 (M.D. Pa. Jan. 11, 2018), *report and recommendation adopted*, No. CV 3:14-00317, 2018 WL 1744598 (M.D. Pa. Apr. 11, 2018) (explaining this Court and the Third Circuit's preference to determine cases on the merits).

contractual discretion reasonably and with proper motive; and that Plaintiffs subsequently suffered damages. *See City of Rocliford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 768 (N.D. Ill. 2019), *reconsideration denied*, No. 17 C 50107, 2019 WL 2763181 (N.D.Ill. May 3, 2019); *see also Innovative Bus. Partnerships, Inc. v. Inland Ctys. Reg'l Ctr., Inc.*, 194 Cal. App. 4th 623, 631, 123 Cal. Rptr. 3d 525 (2011) ("A cause of action for breach of the implied covenant of good faith and fair dealing is premised on the breach of a specific contractual obligation."). According to OptumRx, Plaintiffs' claims for violation of the implied duty of good faith and fair dealing must fail as a matter of law. (Doc. 265, at 36). OptumRx contends that Plaintiffs have failed to produce evidence that the alleged breaches of contract caused their damages. (Doc. 258, at 37-39; Doc. 265, at 37-39). Plaintiffs aver that their expert has established OptumRx breached its duty of good faith and fair dealing by paying Plaintiffs below market MAC prices, resulting in the underpayment of hundreds of claims.[9] (Doc. 283, at 28).

---

[9] In disputing Plaintiffs' breach of the implied duty of good faith and dealing claims, OptumRx discusses Plaintiffs' "phantom MAC appeals." (Doc. 265, at 38). A MAC appeal is the process by which a MAC price is altered. (Doc. 266, ¶ 77; Doc. 263-11). MAC appeals are considered daily. (Doc. 266, ¶ 82). OptumRx argues that "Plaintiffs have failed to create a triable issue of fact on an essential element of their claim because, even though discovery has now closed, Plaintiffs have not identified any damages proximately caused by the purported mishandling of their phantom MAC appeals and could not do so during their deposition." (Doc. 265, at 38). OptumRx continues that Plaintiffs' expert failed to quantify or identify any damages arising from the mishandling of any MAC appeals. (Doc. 265, at 38). Plaintiffs respond that their expert testimony establishes that, in determining MAC appeals, OptumRx "obviously disregarded the very wholesale benchmarks it claimed to use, and breached its contractual duty to pay Plaintiffs a market-based MAC price." (Doc. 283, at 28). Further, that their expert testimony supports that the MAC price appealed was below benchmark prices and that OptumRx's failure to pay MAC prices aligned with the benchmarks they purported to use resulted in Plaintiffs being underpaid on hundreds of claims. (Doc. 283, at 28). However, again here without evidence that Plaintiffs were paid the MAC price for their claims, the Court finds it impossible to make a determination on whether OptumRx breached its duty of good faith and fair dealing as it relates to these MAC appeals.

In consideration of the breach of contract analysis *supra*, the Court will not grant summary judgment on Plaintiffs' breach of the implied duty of good faith and fair dealing claims at this time. (Doc. 36, at 101-09). As the record is inconclusive as to whether OptumRx paid Plaintiffs the MAC price for their claims, there remains questions of material fact about whether OptumRx breached its duties to Plaintiffs, implied or otherwise. After limited discovery on the methodologies OptumRx used to reimburse Plaintiffs, the Court will be in a better position to address Plaintiffs' breach of implied duty claims. (Doc. 36, at 101-09). Accordingly, OptumRx's motion for summary judgment is **DENIED without prejudice** as to Plaintiffs' breach of the implied duties of good faith and fair dealing claims. (Doc. 36, at 101-09; Doc. 257).

### 3.   Violation of Louisiana Revised Statute § 22:1863 *et seq*.

OptumRx argues that Plaintiffs' claim for violation of Louisiana Revised Statute § 22:1863 et seq. fails because none of the non-arbitrable Plaintiffs have their principal place of business in Louisiana. (Doc. 265, at 40). Plaintiffs do not respond to this argument in their brief in opposition to OptumRx's motion. (Doc. 283; Doc. 294, at 32).

A review of the record reveals OptumRx's averment holds true: none of the non-arbitrable Plaintiffs are located in Louisiana. Four of the Plaintiffs, the Redners Pharmacies, have their principal place of business in Pennsylvania. (Doc. 266 ¶ 7). Plaintiff Wells Pharmacy has its principal place of business in Colorado. (Doc. 266, ¶ 8). Plaintiff Stacy's Pharmacy has its principal place of business in Illinois. (Doc. 266, ¶ 9). Hometown Pharmacy and Med Depot Pharmacy have or had their principal places of business in Missouri. (Doc. 266, ¶ 10). Accordingly, the Court finds OptumRx is entitled to summary judgment on

16

Plaintiffs' allegation that OptumRx violated Louisiana Revised Statute § 22:1863 *et seq* against them and thus its motion is **GRANTED** as to this claim. (Doc. 36, at 36; Doc. 257). Plaintiffs' claims brought under Louisiana Revised Statute § 22:1863 *et seq* are **DISMISSED with prejudice** as to the non-arbitrable Plaintiffs at bar. (Doc. 36, at 36).

    B.  P<small>LAINTIFF'S</small> M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small>

Plaintiffs seek summary judgment on two issues of contract interpretation: whether the Contracts require that OptumRx pay a single MAC price for the same drug under the same health insurance plan during the same relevant time frame to all participating providers and whether the Contracts require that each individual MAC price be market-based. (Doc. 260; Doc. 263, at 6). Having determined that additional discovery is required to determine whether OptumRx paid Plaintiffs' claims using MAC pricing, the Court finds these questions of contract interpretation to be premature. Without knowing how Plaintiffs were reimbursed, it is impossible for this Court to conclude that the MAC provisions of the Contracts are relevant in this matter. However, because the Court understands that the requested discovery is very likely to reveal Plaintiffs were paid the MAC price for their claims, the Court will deny Plaintiffs' motion for partial summary judgment without prejudice in anticipation that it will be re-asserted once the Court has a complete record before it. (Doc. 260). Accordingly, Plaintiffs' motion for partial summary judgment is **DENIED without prejudice**. (Doc. 260).

**IV.**   C<small>ONCLUSION</small>

For the reasons set forth herein, Plaintiffs' motion for summary judgment is **DENIED without prejudice**. (Doc. 260). OptumRx's motion for summary judgment is **DENIED in part** and **GRANTED in part**. (Doc. 257). OptumRx's motion for summary judgment is

**DENIED without prejudice** as to Plaintiffs' breach of contract and breach of the implied duties of good faith and fair dealing claims. (Doc. 257). The parties are directed to engage in limited discovery on the issue of Plaintiffs' reimbursement data. OptumRx is directed to produce information related to whether Plaintiffs' claims were paid using the MAC pricing metric. OptumRx's motion for summary judgment is **GRANTED** as to Plaintiffs' claim for violation of Louisiana Revised Statute § 22:1863. Plaintiffs' claim for violation of Louisiana Revised Statute § 22:1863 is hereby **DISMISSED with prejudice.** In consideration of this Court's previous grant OptumRx's motion to compel arbitration (Doc. 410), Plaintiffs' motion to sever is **DENIED as MOOT**. (Doc. 309).

    An appropriate Order follows.


**Dated: September 20, 2024**                    *Karoline Mehalchick*
                                 **KAROLINE MEHALCHICK**
                                 **United States District Judge**